806 F.2d 1364
 Richard BERGQUIST, husband/Guardian Ad Litem; Susan Nagoda
Bergquist, wife/Guardian Ad Litem; A. Taara
Bergquist; N. Torbin Bergquist,
Plaintiffs/Appellants,
v.
COUNTY OF COCHISE, David Joshua Bossak, Jesse Vaughn Brazel,
Jr., Mary Margaret Brazel, et al., Defendants/Appellees.
Robert J. Eyman and Karen Eyman, David Kunz, Travis
Brotherton Kuykendall & Daniel O'Brien,
Defendants-Appellants.
Richard BERGQUIST, husband/Guardian Ad Litem; Susan Nagoda
Bergquist, wife/Guardian Ad Litem; A. Taara
Bergquist; N. Torbin Bergquist,
Plaintiffs-Appellees,
v.
COCHISE COUNTY, David Joshua Bossak, Jesse Vaughn Brazel,
Jr., Mary Margaret Brazel, Larry Albert Dever, Nancy Jean
Dever, Bert A. Goodman, Frances D. Goodman, Paul Robert
Gruen, David Lloyd Jark, Victoria S. Jark, David Lynn Jones,
Jimmy Vance Judd, Edna R. Judd, Dale Lehman, Mary Louise
Lehman, Ruben Leon, Sylvia Sue Leon, Kenneth Allen Shutley,
Susan G. Shutley, Raymond Russel Thatcher, Albert James
Tomlinson, Cheryl Diane Tomlinson, William Arthur Townsend,
et al., Defendants-Appellants.
Richard BERGQUIST, husband/Guardian Ad Litem; Susan Nagoda
Bergquist, wife/Guardian Ad Litem; A. Taara
Bergquist; N. Torbin Bergquist,
Plaintiffs-Appellees,
v.
COCHISE COUNTY, et al., Defendants,
and
Robert J. Eyman and Karen Eyman, David Kunz, Travis
Brotherton Kuykendall and Daniel O'Brien,
Defendants-Appellants.
 Nos. 85-1505, 85-1531 and 85-1532.
 United States Court of Appeals,
Ninth Circuit.
 Argued Feb. 13, 1986.
Submitted April 24, 1986.
Decided Dec. 23, 1986.
 
 Tony K. Behrens, Centry, Desens, Behrens & Roll, Bisbee, Ariz., for plaintiffs/appellants.
 William Smitherman, Smitherman, Hubert & Sacks, James D. Whitney, Asst. U.S. Atty., Tucson, Ariz., for defendants/appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before BROWNING, Chief Judge, TANG and BEEZER, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 The Bergquists appeal the district court's dismissal of their suit against Cochise County officials under 42 U.S.C. Sec. 1983 (1982), and their suit against federal Drug Enforcement Administration (DEA) officials directly under the constitution, as authorized by Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Their suit stems from a marijuana raid of their rural property in May of 1983. The Bergquists assert three grounds for liability for fourth and fourteenth amendment violations, and they request an injunction to require adequate training of magistrates. The County and federal defendants cross appeal for costs and attorney fees. We reverse in part.
 
 BACKGROUND
 
 2
 On May 3, 1983 DEA agents contacted the Cochise County Sheriff's Office with information about a sighting of marijuana plants in a greenhouse by a confidential informant who also indicated he had encountered vicious Doberman pinscher dogs on the property. Based on this information a joint raid was planned by the DEA and the Cochise County Special Response Team (SRT). Efforts to corroborate the marijuana sighting through aerial and ground surveillance were unsuccessful. Deputy Sheriff Thatcher obtained a search warrant for the Burwell Hatch Farm based on the information supplied by the confidential informant.
 
 
 3
 On May 4, 1983 thirteen officers--members of the SRT, dressed in military-style uniforms and armed with military-style weapons--arrived at the Bergquist residence to execute a search actually authorized for the Burwell Hatch Farm. The two minor children of the Bergquist family were at home alone. The officers failed to discover any Doberman pinschers, but threatened to shoot the children's pet dogs. They searched the greenhouse but found no marijuana plants. They then searched other buildings on the property and in the process damaged or destroyed photographic equipment and ceramic art works in the Bergquists' studio.
 
 
 4
 The Bergquists complained in the district court that the search warrant was issued without probable cause and was mistakenly executed at their residence and carried out in an unreasonable and excessive manner. They also alleged that the DEA and Cochise County had failed to properly train and instruct their officers in the necessity to corroborate informant data, and that Cochise County had failed to adequately train its magistrates. The district court granted the defendants' motion to dismiss. It held: (1) the plaintiffs lacked standing to challenge the validity of the search warrant, since it was directed at a third party; (2) the officers were shielded from liability by the magistrate's decision to issue a warrant; (3) the plaintiffs' claims of unreasonable execution were not of constitutional magnitude because the officers reasonably relied on the warrant in conducting the search, and their mistaken execution upon the wrong residence did not rise to the level of a constitutional violation; (4) there is no liability for failure to supervise or train officers unless it rises to a level of gross negligence or leads to a violation of plaintiffs' constitutional rights; and (5) there is no duty of a county to train judicial officers.
 
 DISCUSSION
 Standard of Review
 
 5
 The federal and county defendants insist that we should review a Sec. 1983 dismissal under a stricter standard than other dismissals and require alleged constitutional violations to be pleaded with greater particularity than in other civil cases. See, e.g., Elliott v. Perez, 751 F.2d 1472, 1479 (5th Cir.1985). That, however, is not the law in this circuit. We review a dismissal of a Sec. 1983 action for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) de novo, under the controlling standard of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957): dismissal is appropriate only when the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir.1986). Our review of the complaint and controlling legal principles leads to the conclusion that dismissal of the Bergquists' claim was unwarranted.
 
 
 6
 Qualified Immunity from Liability for Wrongfully Seeking and
 
 Obtaining the Warrant
 
 7
 The district court held the Bergquists lacked standing to challenge the warrant because it was directed at a third party. Neither the Government nor Cochise County presses this point on appeal, but we note that the Bergquists have standing to challenge the execution of a warrant upon their property because they meet the test of having a "legitimate expectation of privacy in the premises" of their rural residence. Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978).
 
 
 8
 The district court dismissed the claim of fourth amendment violation, holding the officers were shielded from liability by the magistrate's issuance of a warrant. The recent decision of Malley v. Briggs, --- U.S. ----, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986), requires that we reverse and remand on this question. The Supreme Court there decided that the "objective reasonableness" standard applicable in a suppression hearing under United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) also defines the qualified immunity available in a Sec. 1983 damages action. Briggs, 106 S.Ct. at 1098. The Court expressly rejected the view that a police officer's reliance on a warrant is per se objectively reasonable merely because a judicial officer has found probable cause exists. Id. The question for the district court to decide on remand is "whether a reasonably well-trained officer in [appellee's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Id.
 
 
 9
 The appellees argue that this court should not apply the Briggs standard retroactively because under Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) a government official can be liable only for violation of "clearly established statutory or constitutional rights." This argument is misplaced. Neither the case at bar nor Briggs involves a substantive constitutional right whose newly emerging status raises the question of when officials may properly be charged with knowledge of its existence. See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (warrantless wiretaps not clearly unconstitutional until after United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)); Capoeman v. Reed, 754 F.2d 1512 (9th Cir.1985) (cutting inmate's hair violated first amendment rights, but applicable standard unresolved at time of incident); Ward v. San Diego County, 791 F.2d 1329 (9th Cir.1986) (policy of strip searches of minor offense arrestees, if unreasonable, gives rise to Sec. 1983 liability under legal standards obtaining in May 1981).
 
 
 10
 This case and Briggs involve the fundamental, and long-established, rights protected by the fourth amendment. Briggs, 106 S.Ct. at 1098, addressed an allegedly unconstitutional arrest and the instant case implicates the fourth amendment's core "right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961). See also United States v. United States District Court, 407 U.S. at 313, 92 S.Ct. at 2134 ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.").
 
 
 11
 Briggs in no way alters the substantive law governing searches, it merely establishes that the qualified immunity from damage suits is no broader than the good faith exception to the exclusionary rule. The search at issue here took place in May of 1984, some two months before the Supreme Court first created a good faith exception to the exclusionary rule in Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and thus the involved officers had no reason to imagine that an allegedly unconstitutional search would lead to anything but suppression of any evidence obtained and/or to personal liability for any damages sustained.
 
 
 12
 Liability for Wrongful Execution of the Warrant
 
 
 13
 The district court dismissed this claim holding that the manner, place, and justification of the search were reasonable, that the defendants had no reasonable grounds to believe the warrant did not authorize the search they conducted, and that mistaken execution of a warrant on the wrong property does not rise to the level of a constitutional violation. In this regard, since the federal agents were not present at the time of the search, dismissal of the claim as to the Government was proper.
 
 
 14
 We have already indicated Briggs, 106 S.Ct. at 1098 holds that the officers' reliance on the warrant is not per se reasonable merely because a magistrate found probable cause. Even should the district court conclude upon remand that the reliance was reasonable, the question remains whether the complaint states a claim for damages under Sec. 1983 for an unreasonable execution of the warrant. Officers' conduct in executing a search warrant is always subject to judicial review as to its reasonableness. Dalia v. United States, 441 U.S. 238, 258, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177 (1979); Tarpley v. Greene, 684 F.2d 1, 8 (D.C.Cir.1982). Officers may face Sec. 1983 liability for executing a warrant in an unreasonable manner. Tarpley, 684 F.2d at 8-9; Duncan v. Barnes, 592 F.2d 1336, 1338 (5th Cir.1979) ("From the moment of entry until the moment of departure, appellees' conduct was subject to scrutiny for reasonableness under the fourth amendment.").
 
 
 15
 The Bergquists also argue that the destruction of their property constituted an unwarranted seizure under the fourth amendment, and violated their fourteenth amendment right to substantive due process. The appellees argue that the due process claim is barred by Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which held that property deprivations by state officials do not constitute deprivations of due process when they are procedurally random and unauthorized (making it impracticable for the state to provide adequate predeprivation process), and the state provides adequate post-deprivation remedies.
 
 
 16
 We have recently decided that Parratt does not apply to denials of substantive due process, in which the deprivation is the taking of property itself, not the process by which the taking is accomplished. Mann v. City of Tucson, 782 F.2d 790, 792 (9th Cir.1986) (per curiam). Thus, the officers' conduct in destroying the Bergquists' property must be evaluated against a reasonableness standard to determine whether the officers violated either the fourth or the fourteenth amendment. "[D]estruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment." Tarpley, 684 F.2d at 9. We have held that the reasonableness of a search authorized by a valid warrant may be vitiated "by the manner in which the police conducted the search, even if the conduct did not rise to the shocking level of a due process violation." United States v. Penn, 647 F.2d 876, 882 (9th Cir.) (en banc), cert. denied, 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980).
 
 
 17
 If the damage to the property was caused by the officers' mere negligence, there is no violation of the due process clause of the fourteenth amendment. Daniels v. Williams, --- U.S. ----, 106 S.Ct. 662, 666-67, 88 L.Ed.2d 662 (1986); Mann, 782 F.2d at 793. If the district court concludes that allegations charging conduct beyond mere negligence are "entirely conclusory and unsupported by any facts alleged in the complaint" dismissal will be appropriate. Mann, 782 F.2d at 793 (citing Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir.1982)).
 
 
 18
 Liability for Failure to Properly Train and Supervise
 
 
 19
 The district court held there was no liability for failure to train and supervise the officers who conducted the search because there was no gross negligence and no underlying violation of the appellants' constitutional rights. Because we have reversed the district court's judgment on the officers' qualified immunity, we must also vacate its decision on the supervisors' liability.
 
 
 20
 If the officers' conduct in seeking or in executing the warrant was sufficiently unreasonable to violate constitutional standards, then it is possible that the responsible supervisors might face liability under Sec. 1983. It is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct. Monell v. Department of Social Services, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 n. 58, 56 L.Ed.2d 611 (1978). The causal link between the supervisors' conduct and the deprivation of a right is key because "[a]nyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978). In cases in which plaintiffs allege there is an official policy condoning or authorizing unconstitutional acts, the Supreme Court has indicated that to prevail the plaintiffs must demonstrate an "affirmative link" between their deprivation and "the adoption of [a] plan or policy by [the supervisors]--express or otherwise--showing their authorization or approval of such misconduct." Rizzo v. Goode, 423 U.S. 362, 370-71, 96 S.Ct. 598, 603-04, 46 L.Ed.2d 561 (1976).[1]
 
 
 21
 In this case, the Bergquists contend the supervisors (both the County and federal DEA supervisors) are liable because of a policy of failing to train the officers in the need to verify informant data before seeking a warrant and in proper methods of executing a warrant. We think the complaint sufficiently alleges a causal connection between a policy of inadequate training and supervision and the asserted deprivation "under color of law of a federally secured right." McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir.1979). The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal participation or by setting in motion a "series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson, 588 F.2d at 743-44.
 
 
 22
 There is little question that a policy of inadequate training is an actionable policy or custom. See, e.g., Voutour v. Vitale, 761 F.2d 812, 819-20 (1st Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); Marchese v. Lucas, 758 F.2d 181, 188-89 (6th Cir.1985); Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir.1983); Herrera v. Valentine, 653 F.2d 1220, 1224 (8th Cir.1981); Owens v. Haas, 601 F.2d 1242, 1246-47 (2d Cir.), cert. denied, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). The district court must determine whether the facts alleged rise to the necessary level of gross negligence. It is now settled that mere negligence does not give rise to Sec. 1983 liability for violations of the due process clause. Daniels, 106 S.Ct. at 666-667. The Supreme Court expressly reserved the question whether "something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." Id. at 667 n. 3. The lower courts have generally held gross negligence in training or supervision sufficient for liability, finding a city liable either for failing to implement a training program for its officers or for implementing a program grossly inadequate to prevent the type of harm suffered. See Languirand v. Hayden, 717 F.2d 220, 227 (5th Cir.1983) ("failure to train must constitute gross negligence amounting to conscious indifference"), cert. denied, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir.) (municipal liability only where there is a complete failure to train or training is so reckless or grossly negligent that future police misconduct is almost inevitable), cert. denied, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); Herrera, 653 F.2d at 1224 (failure to train or grossly negligent training); Owens, 601 F.2d at 1246 (gross negligence or "deliberate indifference"). We hold that a policy of gross negligence in training or supervision gives rise to Sec. 1983 liability.
 
 
 23
 The district court must consider on remand the degree of negligence alleged because we cannot determine whether its dismissal of this claim was based on its assumption that the officers' conduct (and thus the supervisors' conduct) was shielded from liability by the magistrate's issuance of a warrant.
 
 Injunctive Relief
 
 24
 The district court properly denied the Bergquists' request for injunctive relief from Cochise County's alleged policy of failure to train its magistrates. The qualifications of judicial officers are established by the constitution, Ariz. Const. art. VI, Sec. 22, and it would do violence to Arizona's fundamental doctrine of separation of powers for this court to create a duty in the County to train its magistrates. See, e.g., Winter v. Coor, 144 Ariz. 56, 695 P.2d 1094 (1985). As judicial officers, magistrates enjoy absolute immunity at common law, Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872), and have been specifically exempted from liability under Sec. 1983. Pierson v. Ray, 386 U.S. 547, 554-555, 87 S.Ct. 1213, 1217-1218, 18 L.Ed.2d 288 (1967). Similarly, the independence of the judiciary may not be compromised by an order to the executive branch to impose training requirements upon the judiciary.
 
 Costs and Fees
 
 25
 The district court declined to award costs and attorney fees to the prevailing defendants. We vacate this portion of the decision pending a potentially different outcome upon remand. We note that the court was well within its discretion in declining to award attorney fees under 42 U.S.C. Sec. 1988. Under Fed.R.Civ.P. 54(d), costs "shall be allowed as of course to the prevailing party" and the district court should have stated its reasons for disallowing costs. See Serna v. Manzano, 616 F.2d 1165 (10th Cir.1980).
 
 CONCLUSION
 
 26
 The judgment of the district court is AFFIRMED in part, VACATED in part, and the cause is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 It is now established that such a plan or policy may not be proved through reference to a single unconstitutional activity unless "proof of the incident includes proof that it was caused by an existing unconstitutional ... policy." City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). Even if the Bergquists were claiming such a policy exists, Tuttle does not block their claim at the pleading stage, as it speaks only to what must be proved to support liability