**Doris A. SCOTT, individually and as Personal Representative of the Estate of John William Scott, deceased, Plaintiff,**

v.

**James L. HENRICH, David J. Flamand, Butte–Silver Bow Law Enforcement Agency, City of Butte, and County of Silver Bow, Defendants.**

**No. CV–87–003–BU–PGH.**

United States District Court,
D. Montana,
Butte Division.

Nov. 17, 1988.

500

---

Curtis G. Thompson, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for plaintiff.

C. Richard Anderson, Brendon J. Rohan, Poore, Roth & Robinson, Butte, Mont., for Henrich, Flamand and Law Enforcement Agency.

Gregory C. Black, Corette, Smith, Pohlman & Allen, Butte, Mont., for Butte–Silver Bow County.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

The plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff also advances numerous pendent claims for relief predicated upon the law of the State of Montana. The matter is presently before the court on motion of all named defendants requesting the court to enter summary judgment in their respective favors upon those claims for relief prosecuted under 42 U.S.C. § 1983. The defendants further request the court to refrain from exercising its pendent jurisdiction over those claims advanced by the plaintiff which are predicated upon Montana law.

Filed contemporaneously with, and in obvious response to, the defendants' motions for summary judgment was a motion by the plaintiff seeking leave of court to amend the complaint. Because disposition of the defendants' motion for summary judgment would be directly affected by disposition of the plaintiff's motion to amend, the court appropriately addresses the motions simultaneously.

### I.

This action has its genesis in the shooting death of John Scott by a law enforcement officer in the employ of Butte–Silver Bow County, Montana (hereinafter the "County").[1] According to the allegations advanced in the complaint by Doris A. Scott, the widow of John Scott, police officers James L. Henrich and David J. Flamand responded to a call on August 4, 1984, regarding the discharge of a firearm in the location of the intersection of Park and Clark Streets in Butte, Montana. Upon their arrival at the location, the officers were advised, by a local resident, that an individual had fired a rifle in the area and had entered a nearby apartment. While the precise events which transpired immediately following the officers' arrival may prove to be the subject of a factual dispute, for purposes of providing background, it suffices to summarize that officers Henrich and Flamand, with weapons drawn, went to the door of the apartment which they were apprised the perpetrator had entered, and that John Scott responded to the officers' announcement by opening the door of the apartment. As events transpired, shots were fired by Officer Flamand which resulted in the death of John Scott. The officers have stated John Scott was in possession of a shotgun at the time he opened the door, and the officers fired their weapons when Scott pointed the shotgun at Sergeant Henrich.

Doris Scott, individually and as personal representative of the estate of her deceased husband, instituted the present action under 42 U.S.C. § 1983 against officers Henrich and Flamand, the Butte–Silver Bow law enforcement agency and Butte–Silver Bow County, Montana, claiming that the defendants' conduct violated the rights secured John Scott by the fourth and fourteenth amendments to the United States Constitution.[2] Scott also advances a myriad of claims predicated upon the law of the State of Montana.

### II.

In her original complaint Scott alleges that the conduct of officers Henrich and

1. The complaint names as defendants the "City of Butte" and "County of Silver Bow". The court notes these two former governmental entities were consolidated in 1977 to form a single governmental entity denominated Butte–Silver Bow County, Montana.

The complaint also names both the Butte–Silver Bow law enforcement agency and Butte–Silver Bow as defendants. The latter entity is the local governmental entity. The former agency is the law enforcement department of Butte–Silver Bow, created pursuant to local ordinance promulgated under authority of state law. Mont. Code Ann. § 7–3–1104. For purposes of deter-mining liability under 42 U.S.C. §§ 1983 and 1988, both of the defendant entities are properly considered as the local governmental entity.

2. Scott also alleges a violation of the due process clause of the fifth amendment. The fifth amendment, however, constrains the conduct of the federal government and its actors, and will not serve as the basis of a section 1983 claim. *See, Brower v. Inyo County,* 817 F.2d 540, 545 (9th Cir.1987). Scott's fifth amendment claim is simply duplicative of her fourteenth amendment claim. *See, Smith v. City of Fontana,* 818 F.2d 1411, 1424 (9th Cir.1987).

Flamand negligently caused the suffering and ultimate death of John Scott. With respect to the County, Scott alleges those entities were negligent in their selection, training and supervision of Henrich and Flamand, as well as in the formulation and enforcement of policies and procedures governing the conduct of the officers within their employ, and that such negligence was the cause of the constitutional deprivations suffered by John Scott. Scott seeks to amend her complaint, as originally filed, to allege the conduct of the defendants which led to the purported deprivation of John Scott's constitutional rights was grossly negligent in nature, amounting to a deliberate indifference by the defendants. Furthermore, Scott seeks to further allege that the defendant entities actually endorsed the alleged grossly negligent conduct of officers Henrich and Flamand.

Characterizing Scott's proposed amendment to the original complaint as an attempt to artfully plead around the defendants' motions for summary judgment, the defendants object to Scott's request for leave as untimely, and imply that amendment to the pleadings should not be allowed during the pendency of a motion for summary judgment. The defendants submit the original complaint fails to state a civil rights claim cognizable under 42 U.S.C. § 1983, since the complaint only sets forth allegations of simple negligence.

While some courts have refused leave to amend the pleadings sought after the opposing party has moved for summary judgment, *see, e.g., Freeman v. Continental Gin Company,* 381 F.2d 459 (5th Cir. 1967), *rehearing denied,* 384 F.2d 365, the fact that a party seeks to amend his pleading after a motion for summary judgment has been filed by the opposition is an insufficient basis, in and of itself, to deny leave to amend. *See, United States v. Webb,* 655 F.2d 977, 979 (9th Cir.1981); *Sherman v. Hallbauer,* 455 F.2d 1236 (5th Cir.1972). As a general rule, where the amendment sought alleges a different or more refined theory of liability or defense, a court should hold a motion for summary judgment in abeyance pending submission of the opposing party's proposed amended pleading. *See, Zaidi v. Ehrlich,* 732 F.2d 1218 (5th Cir.1984). Cognizant of the nature of the amendment to the complaint which Scott seeks, the court is convinced the interests of justice dictate that Scott be afforded the opportunity to amend her complaint. The allegations of the complaint, as amended, are sufficient to state a claim under 42 U.S.C. § 1983.

In *Daniels v. Williams,* 474 U.S. 327, 330–32, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986), the Supreme Court held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing an unintended loss of or injury to life, liberty or property." (emphasis in original.) The Court reiterated in *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986), that the due process restrictions "are just not triggered by lack of due care" by state officials, and therefore allegations of negligence do not state a claim cognizable under 42 U.S.C. § 1983. The Court in *Daniels* expressly reserved the question "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the *protections* of the Due Process Clause." *Daniels,* 474 U.S. at 334 n. 3, 106 S.Ct. at 666–67 n. 3.

Since *Daniels* this circuit has followed earlier case law holding that the Due Process Clause can be implicated by conduct of state officials amounting to "recklessness," or "gross negligence" or "deliberate indifference". *See, Wood v. Ostrander,* 851 F.2d 1212, 1214–15 (9th Cir.1988) (recognizing that the intentional assertion of government power which tends to show a disregard for a claimant's safety was sufficient to state a claim under section 1983); *Estate of Conners v. O'Connor,* 846 F.2d 1205, 1208 (9th Cir.1988) (conscious indifference amounting to gross negligence is sufficient to state a claim under section 1983); *Ketchum v. County of Alameda,* 811 F.2d 1243, 1246 and n. 3 (9th Cir.1987) (gross negligence is sufficient to state a claim under section 1983); *Bergquist v. County of Cochise,* 806 F.2d 1364, 1370 (9th Cir.1986); (recognizing that conduct

constituting gross negligence may create a section 1983 liability).

The allegations of simple negligence upon which Scott's original complaint was predicated would be insufficient to state a claim cognizable under 42 U.S.C. § 1983. The allegations of Scott's complaint as amended, however, allege that the defendants acted with gross negligence amounting to deliberate indifference to the victim's well-being. Accordingly, the allegations are sufficient to defeat the defendants' motion for summary judgment.

### III.

Scott seeks relief on behalf of the decedent's estate, pursuant to 42 U.S.C. § 1983, upon the ground the conduct of officers Henrich and Flamand, and the policies and customs of Butte–Silver Bow, violated the rights secured John Scott by the fourth amendment, as applicable to the states through the fourteenth amendment, *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed.2d 1782 (1949), and the substantive due process rights granted by the fourteenth amendment. The allegations of Scott in that regard are two-pronged. First, she alleges officers Henrich and Flamand lacked probable cause justifying the seizure of John Scott. Secondly, she asserts the officers utilized excessive force in effectuating the "seizure" of John Scott. Scott further alleges that the County by "policy or custom endorsed unreasonable seizure and the application of excessive force by [its] law enforcement officers."

### PROBABLE CAUSE

While probable cause is ordinarily a question for the jury, summary judgment upon the issue is appropriate if the evidence of record is such that no reasonable jury could find that the officers lacked probable cause. *McKenzie v. Lamb,* 738 F.2d 1005, 1008 (9th Cir.1984). In determining whether there exists a genuine issue of material fact which would preclude the entry of summary judgment pursuant to Fed.R.Civ.P. 56, all facts in the record and inferences drawn from them must be viewed in the light most favorable to the non-moving party. *See, Water West, Inc.*

*v. Entek Corporation,* 788 F.2d 627, 628–29 (9th Cir.1986); *Clipper Exspress v. Rocky Mountain Motor Tariff,* 690 F.2d 1240, 1250 (9th Cir.1982). In accordance with the prescriptions of Fed.R.Civ.P. 56(c), the moving party bears the burden of establishing that there are no genuine issues of material fact which preclude the entry of summary judgment. *See, Aydin Corporation v. Loral Corporation,* 718 F.2d 897 (9th Cir.1983). However, when a motion for summary judgment is made and supported by appropriate affidavits, the non-moving party is required to produce evidence demonstrating the existence of a genuine issue of material fact. *See, Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even in the absence of opposing affidavits, however, summary judgment is inappropriate where the moving parties' papers are insufficient on their face to establish that the movant is entitled to summary judgment as a matter of law. *See, Hamilton v. Keystone Corporation,* 539 F.2d 684, 686 (9th Cir.1976).

In support of their motion for summary judgment upon the issue of probable cause, the defendants rely primarily upon the sworn testimony of officers Henrich and Flamand, together with the sworn testimony of one officer Maylevac, who also responded to the disturbance call preceding the fatal shooting. Scott has filed no affidavits or other evidence in opposition to the defendants' motion for summary judgment upon the issue of probable cause. Accordingly, the court must accept the facts stated in the testimony of the officers as true, and determine whether those facts are sufficient to warrant the entry of summary judgment in the officers' favor as a matter of law. *See, White by White v. Pierce County,* 797 F.2d 812, 815 (9th Cir.1986).

While Scott is not precise in the presentation of her position with respect to the issue of probable cause, the court perceives her claim to be three-fold in nature. First, Scott implies that upon arrival at the scene, the officers lacked probable cause to be-

lieve that an offense had been committed. Second, Scott implicitly asserts that assuming the officers had probable cause to believe an offense had been committed, they nonetheless lacked probable cause to believe that the person to be arrested would be found within either the apartment complex, or the specific apartment where John Scott had retreated. Thirdly, Scott asserts that the officers lacked probable cause to effectuate the "seizure" of John Scott at the precise time the fatal shooting occurred.

 It is obviously quite true that if a law enforcement officer enters a private premises for the purpose of making a warrantless arrest, there must exist probable cause to believe that the person being sought has committed an offense. *See, Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Likewise, the court recognizes that before entry of a private premises to arrest is permissible, the arresting officer must have probable cause to believe that the person to be arrested is within the particular premises to be entered. *See, Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). *See also, United States v. Phillips*, 497 F.2d 1131 (9th Cir.1974). Such inquiries into the existence of probable cause, however, are necessitated only if the law enforcement officers enter a private premises to effectuate an arrest. *See, United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

 It is undisputed in the record that the "seizure" of John Scott occurred when John Scott opened the door of the apartment in response to Sergeant Henrich's knock and announcement. Consequently, the "seizure" of John Scott occurred in the open doorway of the apartment. In *United States v. Santana, supra,* the Supreme Court upheld the warrantless arrest of defendant who was standing within the frame of her doorway as the arresting officers approached, but who then retreated into the vestibule of her home where the officers followed and effected the arrest. The Ninth Circuit Court of Appeals has applied the holding of *Santana* to uphold the legal-

ity of a warrantless arrest of a defendant as he stood in the doorway of his home. *United States v. Botero*, 589 F.2d 430 (9th Cir.1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979). The present situation, however, differs from that presented in *Santana* and *Botero* since the situation is one where the suspect was "seized" as he stood inside his home and the officers stood outside with drawn weapons. Under such circumstances, it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home. *United states v. Johnson*, 626 F.2d 753, 757 (9th Cir.1980). Consequently, absent probable cause, the officers were not free to enter the home of Scott to effectuate the arrest of the believed perpetrator.

"Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual context—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983), *reh. denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453. Probable cause is determined by applying a "totality of the circumstances" analysis, *Id.* at 238, 103 S.Ct. at 2332, and requires a "probability or substantial chance of criminal activity." *Id.* at 243 n. 13, 103 S.Ct. at 2334–35 n. 13; *see also, Merriman v. Walton*, 856 F.2d 1333 (9th Cir.1988). The probable cause test is an objective one which requires the existence of facts which would warrant a belief by "a prudent man," *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959), "a man of reasonable caution," *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959), or "a reasonably discreet and prudent man." *Dumbra v. United States*, 268 U.S. 435, 441, 45 S.Ct. 546, 548–49, 69 L.Ed. 1032 (1925). Based upon the uncontroverted facts of record, the court is compelled to conclude that officers Henrich and Flamand did, in fact, have probable cause to believe that an offense had been committed in the area of the Scott apartment, and that the perpetrator of that offense was, at the pertinent time, located

within the apartment occupied by John Scott.

The situation presented to officers Henrich and Flamand is similar to that which the Supreme Court commented upon in *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967):

> The police were informed that an armed robbery had taken place, and that the suspect had entered [a certain house] less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for person and weapons could have insured that [the perpetrator] was the only man present and that the police had control of all weapons which could be used against them or to effect an escape.

387 U.S. at 298–299, 87 S.Ct. at 1645–46.

Based upon the information conveyed to officers Henrich and Flamand, a reasonable man would have engaged in the course of action taken by those officers. The officers had reasonable cause to believe there existed a present danger which warranted an immediate intrusion into the apartment occupied by John Scott. The test employed is one of objective reasonableness under the circumstances as they existed at the time the challenged conduct occurred, measured by the information possessed by the officers at that time. Information gained after the fact cannot be relied upon in analyzing the propriety of the officers' conduct. *See, Sherrod v. Berry*, 856 F.2d 802, 804–805 (7th Cir.1988).

Consequently, we come to the issue of whether officers Henrich and Flamand possessed sufficient probable cause to effectuate a seizure of John Scott at the precise time the fatal shooting occurred. "Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979). Applying the law to the facts as established in the record, the court is constrained to conclude officers Henrich and Flamand had probable cause to believe that John Scott was the individual whom the officers were seeking in connection with the reported incident to which they had responded. The officers' reliance upon the statements of an average citizen were reasonable since such statements carry a sufficient indicia of reliability to warrant the officers' reliance upon them to enter the premises of the designated apartment. *See, Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Easter*, 552 F.2d 230 (8th Cir.1977); *United States v. Wilson*, 479 F.2d 936 (7th Cir.1973). This information coupled with Sergeant Henrich's observation that the individual who opened the door of the apartment was in the possession of a firearm would have provided the officers with sufficient probable cause to effectuate a seizure of that individual. Whether Sergeant Henrich actually observed a gun, however, is a point contested by Scott, and which precludes summary judgment at this juncture.

## EXCESSIVE FORCE

Apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the fourth amendment. *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). The reasonableness of force is analyzed in light of such factors as a requirement for the officer's safety, the motivation for the arrest and the extent of the injury inflicted. *McKenzie v. Lamb*, 738 F.2d 1005, 1011 (9th Cir.1984). Accordingly, an allegation that the force utilized in effectuating a personal seizure was excessive, as measured by the foregoing factors, states a claim for relief under 42 U.S.C.

§ 1983 predicated upon the fourth amendment. *Smith v. City of Fontana*, 818 F.2d 1411, 1416 (9th Cir.1987). The question of the reasonableness of the force used in a particular arrest is a question of fact properly determined by the trier of fact, unless qualified immunity is at issue, thereby mandating the trial court to decide the issue on summary judgment. *White by White v. Pierce County*, 797 F.2d 812, 816 (9th Cir.1986) (citations omitted).

The issue presented for determination with regard to Scott's claim of excessive use of force by the officers is whether the defendant officers have demonstrated, as a matter of law, that they are immune from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In determining whether the defendants have sustained their burden under Fed.R.Civ.P. 56, the record must be viewed in the light most favorable to the non-moving party. *Kraus v. County of Pierce*, 793 F.2d 1105, 1110 (9th Cir.1986); *Water West, Inc. v. Entek Corporation*, 788 F.2d 627, 628–29 (9th Cir.1986).

Officers Henrich and Flamand submit there exists no genuine issue of material fact precluding summary judgment in their favor with respect to their claim of qualified immunity. In support of their motion, the officers rely upon the sworn testimony they gave at the Coroner's inquest into the death of John Scott, impressing upon the court that it remains uncontroverted that they resorted to the use of deadly force in response to John Scott pointing a shotgun at them. Consequently, the officers submit their use of deadly force was constitutionally permissible under the circumstances.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that public officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. "Whether an official may prevail in his qualified immunity defense depends upon the 'objective reason-

ableness of [his] conduct as measured by reference to clearly established law.' No other 'circumstances' are relevant to the issue of qualified immunity." *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) (citations omitted). Accordingly, the issue to be addressed in resolving the defendants' claim of qualified immunity in the case at bar is whether a reasonable police officer could have believed, in light of clearly established law, that the use of deadly force was lawful under the circumstances. *See, Anderson v. Creighton*, 483 U.S. 635, _____ - _____, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

■ Analysis must begin with a review of the state of the law at the time of the shooting at issue. In *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Court, in addressing the constitutionality of a fleeing felon statute, which authorized the use of deadly force to prevent the escape of all felony suspects, stated:

Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

471 U.S. at 11–12, 105 S.Ct. at 1701–02. Because a claim of qualified immunity must be assessed in light of clearly established law at the time of the incident in question, it is necessary to determine exactly when any change in law which affects the validity of the claim occurred. *See, Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). In that regard, the court recognizes that the March 27, 1985, ruling in *Garner* post-dated the incident at issue in the case at bar.

However, it is undisputed that *Garner* did not alter the state of the law with respect to the use of deadly force in self-defense or to prevent serious physical harm to another.[3]

■ Likewise, there exists no dispute in the case at bar that at the time of the fatal shooting of John Scott, it was clearly established in the law that the use of excessive force by police officers in an arrest violates the arrestee's fourth amendment right to be free from an unreasonable seizure and substantive due process of law.[4]

■ Scott asserts two arguments in opposition to the officers' motion for summary judgment upon the basis of qualified immunity. First, Scott contends qualified immunity is unavailable to the officers because the law at the time of the shooting clearly established the fourth amendment's proscription against the use of excessive force to effectuate an arrest, and the fourteenth amendment's grant of substantive due process right to be free from egregious government conduct. Second, Scott contends that even if the officers are entitled to rely upon the defense of qualified immunity, there exist genuine issues of material fact precluding the entry of summary judgment. Scott's argument is predicated upon her conclusion that the presence of established law regarding broad constitutional rights, by itself, precludes an official from claiming qualified immunity. The rationale expressed by the Supreme Court in *Anderson v. Creighton, supra,* however, establishes that Scott's view is erroneous. This precise conclusion has recently been emphasized by the court of appeals for this circuit in *Thorsted v. Kelly,* 858 F.2d 571 (9th Cir.1988).

The court in *Thorsted* rejected a claimant's argument that the defense of qualified immunity is unavailable when the right which is alleged to have been violated is clearly established in the law. *Id.* at 573–74. The court in *Thorsted* reiterated the following conclusion reached by Justice Scalia in *Anderson v. Creighton, supra,* 483 U.S. at ___, 107 S.Ct. at 3039–40:

> It simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the fourth amendment then Anderson's search was objectively legally unreasonable. We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable. The same is true of their conclusion regarding exigent circumstances.

The court in *Thorsted* correctly understood *Anderson* to warrant an expanded inquiry into the objective legal reasonableness of a government official's conduct thereby entitling an official to claim qualified immunity on the ground that "he could reasonably have believed his conduct was lawful in light of the clearly established principles" at issue. *Id.* at 574. In accordance with the rationale espoused by the Court in *Anderson,* officers Henrich and Flamand are clearly entitled to assert the defense of qualified immunity on the ground that they could reasonably have believed their conduct was lawful in light of the clearly established principles relat-

---

**3.** The court notes that at the time of the fatal shooting of John Scott, Montana statutory law provided at Mont.Code Ann. § 45–3–102 (1984):
A person is justified in the use of force or threat to use force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent

imminent death or serious bodily harm to himself or another or to prevent the commission of a forcible felony.

**4.** Egregious government conduct in the form of excessive and brutal use of physical force constitutes a violation of substantive due process of law as guaranteed by the fourteenth amendment. *See, Smith v. City of Fontana,* 818 F.2d at 1417; *Rutherford v. City of Berkeley,* 780 F.2d 1444, 1447 (9th Cir.1986).

ing to the use of deadly force to effectuate an arrest.

■ Officers Henrich and Flamand seek to establish their entitlement to qualified immunity by way of a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The officers submit there exists no genuine material issues of fact regarding the objective reasonableness of their use of deadly force to effectuate the seizure of John Scott. In response to the officers' motion, Scott submits that there exist factual issues regarding: (1) whether the officers knew or should have known that their actions were violative of constitutional rights, and (2) whether the officers' actions were objectively reasonable. With respect to the former contention, it is well established that the subjective element of the good faith immunity doctrine has been eliminated. *See, Harlow v. Fitzgerald; see also, Bilbrey v. Brown,* 738 F.2d 1462, 1465, n. 5 (9th Cir.1984). With respect to the latter contention, the court is cognizant of the fact that the question of whether a reasonable officer placed in a particular set of circumstances could reasonably believe that his conduct was legal is a fact-specific one. *See, Thorsted v. Kelly, supra,* 858 F.2d at 575.

Officers Henrich and Flamand have supported their motion by admissible evidence, *i.e.,* sworn statements made by competent witnesses on personal knowledge, which, standing alone, would entitle them to judgment as a matter of law. In accordance with Fed.R.Civ.P. 56(e), it is incumbent upon Scott to rebut the officers' showing with evidence which would preclude a directed verdict for the officers. *See, See v. Durang,* 711 F.2d 141 (9th Cir.1983); *Jason v. Fonda,* 698 F.2d 966 (9th Cir.1982). Scott has the burden to come forward with specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

■ Review of the papers submitted by Scott in opposition to the officers' motion reveals that Scott relies primarily upon an attack to the credibility of the moving parties' sworn statements. However, opposition raising merely a credibility issue is insufficient to preclude summary judgment. *See, National Union Fire Insurance Company v. Argonaut Insurance Company,* 701 F.2d 95 (9th Cir.1983); *Matter of Citizens Loan and Savings Company,* 621 F.2d 911, 913 (8th Cir.1980). Additionally, Scott suggests the existence of two facts which, in her opinion, preclude the entry of summary judgment: (1) subsequent testing of the gun purportedly held by John Scott at the time of the shooting failed to reveal the weapon bore traces of Scott's fingerprints and (2) John Scott was shot in the back. Scott implicitly suggests these facts support the inference that the officers' sworn statements are not credible thereby creating a genuine issue of material fact to be resolved by the jury. With respect to the latter fact, Scott ignores the expert testimony presented at the Coroner's inquest held in connection with the death of John Scott and offered by officers Henrich and Flamand in support of their motion for summary judgment. The testimony of two expert witnesses, *i.e.,* a pathologist and forensic scientist, who testified at the Coroner's inquest indicate that at the time of the shooting John Scott was facing, or standing somewhere between sideways and ten degrees forward, to the shotgun fired by Officer Flamand. With respect to the lack of discernible fingerprints upon the weapon purportedly held by John Scott, Scott offers no additional evidence which establishes a reasonable basis for drawing an inference adverse to the evidence presented by officers Henrich and Flamand.

■ Based upon the circumstances surrounding the transaction in which this litigation has its genesis, it appears to the court that expert testimony would be essential to rebut the evidence presented by officers Henrich and Flamand in support of their motion for summary judgment. Scott has not offered the affidavits of any experts in opposition to the movant's evidence.[5] In the opinion of the court, such

---

5. The court notes that where the affidavits of

experts are offered in opposition to a motion for

expert testimony would be necessary for the trier of fact to legitimately draw the inference that a reasonable officer placed in the position of Henrich and Flamand would not have experienced such apprehension as to warrant the use of the deadly force to which officers Henrich and Flamand resorted. *See, Neely v. St. Paul Fire and Marine Insurance Company,* 584 F.2d 341, 345 (9th Cir.1978). The court's conclusion in this regard is based upon recognition of the fact there is no indication in the record any other eyewitnesses to the incident exist, who could provide evidence probative of the circumstances surrounding the shooting.

Mindful that care must be taken to insure the opponent of a motion for summary judgment adequate opportunity to conduct the discovery necessary to garner · facts essential to rebut the movant's evidence, the court deems it advisable to continue the motion for summary judgment *sub judice,* as it pertains to officers Henrich and Flamand, to allow Scott to pursue discovery in an effort to obtain evidence sufficient to rebut the movants' evidence of record. *See,* Fed.R.Civ.P. 56(f); *First National Bank v. Cities Service,* 391 U.S. 253, 294–98, 88 S.Ct. 1575, 1595–97, 20 L.Ed.2d 569 (1968). Such discovery, however, shall be limited to that discovery which bears upon the factual issue of whether the conduct of John Scott, at the time of the shooting, placed officers Henrich and Flamand in apprehension of their own safety.[6]

## LIABILITY OF COUNTY

Scott also contends the County should be held liable independent of the individual officer defendants because the officers, in effectuating the seizure of John Scott, acted pursuant to the policies, practices and procedures of the County. The County submits, however, Scott has failed to establish the existence of a genuine issue of material fact regarding the adequacy of the County's hiring and training procedures sufficient to defeat a motion for summary judgment. More importantly, the County asserts that because it remains uncontroverted in the record · that officers Henrich and Flamand acted properly and reasonably under the circumstances, the claims advanced by Scott against the County must necessarily fail.

Local governmental entities may be held liable for a constitutional violation "when execution of a government's policy or custom, whether made by its law makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Consequently, in order to hold a local governmental entity liable for an unconstitutional act committed by an employee, a claimant must first establish the existence of a municipal policy, and second, that the policy caused the constitutional violation of which the claimant complains. 436 U.S. at 692, 98 S.Ct. at 2036. The local governmental entity cannot be subjected to vicarious liability under section 1983 for an unconstitutional act committed by an employee. 436 U.S. at 691, 98 S.Ct. at 2036. Rather, the governmental entity may be held liable only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. at 2035. "It is when execution of a government's policy or custom, whether by its lawmakers or by

summary judgment, such affidavits may be sufficient to defeat the motion where they put forward facts for a reasonable basis for drawing adverse inferences from the movant's evidence. *See, National Union Fire Insurance Company v. Argonaut Insurance Company,* 701 F.2d 95, 97 (9th Cir.1983); *Bieghler v. Kleppe,* 633 F.2d 531, 533–34 (9th Cir.1980).

**6.** The court is compelled to note that while discovery in this matter is presently stayed, review of the record reveals that Scott had in excess of ten months from the date this action was instituted, to conduct discovery necessary to rebut the sworn testimony presented at the Coroner's inquest, and upon which officers Henrich and Flamand rely. Nonetheless, the court finds it appropriate to provide Scott the additional opportunity to conduct discovery necessary to address the specific issue upon which the motion for summary judgment with respect to the claims of excessive force turns and lack of probable cause turns.

those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983." 436 U.S. at 694, 98 S.Ct. at 2037.

Recognizing that execution of the "policy" challenged in *Monell* would necessarily violate the constitutional rights of the affected individual, the Court expressly disclaimed any intent to "address . . . what the full contours of municipal liability may be." 436 U.S. at 694–95, 98 S.Ct. at 2037–38. The Court did recognize, however, that the municipal policy must be the "moving force" of the constitutional violation. 436 U.S. at 694–95, 98 S.Ct. at 2037–38. The "moving force" requirement is satisfied where a governmental entity's deliberate policy or act directly violates a person's constitutional rights. *See, Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). At the same time, the Court, cognizant of maintaining the distinction between direct and vicarious liability under section 1983, has studiously cautioned that in those situations where the "policy" at issue is not itself unconstitutional and therefore, execution of the policy does not compel a constitutional violation, careful analysis is required to determine the requisite causal connection between the policy and the constitutional deprivation. *See, Oklahoma City v. Tuttle*, 471 U.S. 808, 824–825, 105 S.Ct. 2427, 2436–2437, 85 L.Ed.2d 791 (1985); *City of Springfield, Massachusetts v. Kibbe*, 480 U.S. 257, 267, 107 S.Ct. 1114, 1120, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting).

In the years since *Monell* was decided, the Court, in attempting to delineate the precise contours of municipal liability under section 1983, has considered several cases presenting the issue of whether an isolated act by a government official or employee represented official policy sufficient to impose liability upon the governmental entity under section 1983. The Court's decisions have resulted in the establishment of a continuum within which the municipal policy alleged in a particular case must be placed, with the ultimate determination to be made being whether a jury reasonably could conclude that the governmental entity's conduct was the moving force in bringing about the alleged constitutional violation. *See, Springfield v. Kibbe, supra*, 480 U.S. at 266–68, 107 S.Ct. at 1120–21; *St. Louis v. Praprotnik*, —— U.S. ——, ——, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988). This precise point is echoed in the statement offered by Justice O'Connor in *Praprotnik*:

> We have assumed than an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business. (citations omitted) At the other end of the spectrum we have held that an unjustified shooting by a police officer cannot, without more, be thought to result from official policy. (citations omitted)

*City of St. Louis v. Praprotnik, supra*, —— U.S. at ——, 108 S.Ct. at 923–24.

In the case at bar, municipal liability is urged upon the basis the County was grossly negligent in the hiring and training of its law enforcement officers. The Supreme Court has not, to this point in time, recognized that a policy which itself is not unconstitutional can ever meet the "policy" requirement of *Monell*. *See, Oklahoma City v. Tuttle*, 471 U.S. at 824, n. 7, 105 S.Ct. at 2436 n. 7. Nor, has the Supreme Court yet resolved the standard of proof required for claims based on a city's failure to act or inadequate acts as "policy" within the meaning of *Monell*. *Id.; see also, City of Springfield, Massachusetts v. Kibbe, supra*, 480 U.S. at 268–70, 107 S.Ct. at 924–25. The court of appeals for this circuit, however, has recognized that a policy of "inadequate training" constitutes an actionable policy or custom within the meaning of *Monell*. *See, Bergquist v. County of Cochise*, 806 F.2d 1364, 1369. The court in *Bergquist* further held that a policy of "gross negligence" in training or supervi-

sion gives rise to municipal liability under section 1983. 806 F.2d at 1370.[7]

The County does not, in essence, quarrel with the general proposition advanced by Scott to the effect, that if the conduct of officers Henrich and Flamand was sufficiently unreasonable to violate constitutional standards, liability may be visited upon the County under section 1983 if an "affirmative link" existed between the alleged deprivation of John Scott's constitutional rights and the County's purported "policy" of grossly inadequate hiring and training of its law enforcement officers. *See, Oklahoma City v. Tuttle*, 471 U.S. at 824–25, n. 8, 105 S.Ct. at 2436–2437, n. 8; *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976). Rather, the County submits Scott has failed to present sufficient evidence to rebut the County's showing that its policies of hiring and training are both adequate, and in conformance with the law of the State of Montana. In addition, the County submits that because the conduct of officers Henrich and Flamand was entirely reasonable under the circumstances, and therefore did not cause a constitutional deprivation of John Scott's rights, it necessarily follows, as a matter of law, that the County cannot be held liable to Scott as its liability was dependent upon the unreasonableness of the officers' actions.

■ Whether a local governmental entity has a "policy" of inadequate hiring and training presents a question of fact, as does the related question whether that "policy" is the moving force behind a constitutional violation. Both issues may be susceptible to disposition via summary judgment, if a claimant is unable to meet his burden under Fed.R.Civ.P. 56 of rebutting a showing by the local governmental entity that the challenged hiring and training procedures are adequate to warrant the entry of judgment in that entity's favor. The court recognizes, however, that in the present case Scott may not have been afforded sufficient time to conduct that discovery necessary to rebut the County's position. At the same time, the court finds it prudent to require Scott to establish the existence of a genuine issue of material fact regarding the reasonableness of the actions taken by officers Henrich and Flamand prior to allowing Scott to engage in extensive discovery regarding the adequacy of the County's hiring and training procedures. Consistent with the court's prior determination that the burden presently rests upon Scott to establish the existence of a genuine issue of material fact regarding the reasonableness of the actions taken by officers Henrich and Flamand in effectuating the seizure of John Scott, the court deems it advisable to stay discovery with respect to the issue of the County's liability under section 1983 until such time as the court resolves the motion for summary judgment of officers Henrich and Flamand.

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the defendants' motions for summary judgment shall be taken under advisement for a period of sixty (60) days. The plaintiff may engage in further discovery during the sixty-day period, with discovery limited to elucidating evidence bearing upon the issue of the reasonableness of the defendant officers' conduct as delineated herein.

---

**7.** Other lower federal courts have characterized the requisite degree of fault essential to impose municipal liability under section 1983 for a deficient training policy as "deliberate indifference", *see, eg., Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2nd Cir.1986), gross negligence amounting to "conscious indifference", *see, eg., Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1983), or gross negligence "amounting to deliberate indifference", *see, Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir. 1985), or gross negligence which insures "that police misconduct is almost inevitable", *see, Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.1982), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). *See also, Patzner v. Burkett*, 779 F.2d 1363 (8th Cir.1985).