Cheron DAVISON by and through her Guardian Ad Litem, Ruby SIMS, Plaintiff,

v.

SANTA BARBARA HIGH SCHOOL DISTRICT, et al., Defendants.

No. CV 97–7423 CM(Ex).

United States District Court, C.D. California.

May 11, 1998.

Catherine Swysen, Sanger & Swysen, Santa Barbara, CA, for plaintiff.

Nancy P. Doumanian, Carpenter & Rothans, Los Angeles, CA, for defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

MORENO, District Judge.

Plaintiff Cheron Davison, by and through her mother and guardian ad litem, Ruby Sims, filed this action on October 8, 1997, against Santa Barbara School District, Michael W. Caston (individually and in his official capacity as Superintendent of the Santa Barbara School District), Donna Stuart (individually and in her official capacity as Principal of San Marcos High School), Ken Montoya (individually and in his official capacity as Vice Principal of San Marcos High School), Robert Burtness (individually and in his official capacity as teacher at San Marcos High School), Santa Barbara School Board, and Does 1 through 100, inclusive. She asserted five claims: (1) unlawful racial discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; (2) violation of 42 U.S.C. § 1983; (3) violation of the California Unruh Act, California Civil Code § 51 et seq.; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.

The case arises in part out of an incident of racial harassment directed toward plaintiff in which several classmates placed on her desk a drawing of an African–American person hanging from a tree by a rope around his or her neck. The name "Sharoon" was written next to the hanging body. Plaintiff alleges that the word combined her name and the word "coon." Plaintiff's complaint to her teacher and those of her parents to school administrators did not improve the situation. Plaintiff's locker was broken into after the incident, and she alleges that she felt intimidated and unsafe when she saw fellow students wearing confederate flags on their clothing while on school premises. She alleges that defendants had long created, encouraged, accepted and tolerated the racially hostile environment at the high school.

On December 19, 1997, defendants moved to dismiss or for a more definite statement and moved to strike the prayer for punitive damages. The Hon. James M. Ideman found the complaint "lacking" in its failure: (1) to show that state immunity had been waived, (2) to allege intentional discrimination, (3) to show that defendants are legally responsible for student conduct, and (4) to allege a policy or custom of discrimination as required under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The court granted the motion for a more definite statement on February 4, 1998.

Presently before this Court are defendants' motion to dismiss plaintiff's amended complaint or, in the alternative, motion for a more definite statement and defendants' motion to strike plaintiffs' prayer for punitive damages set forth in amended complaint. Upon full consideration of the arguments and submissions and for the reasons set forth below, the Court grants the motion to dismiss in part and denies it in part. The Court also denies the motion to strike the prayer for punitive damages at this time.

I

### BACKGROUND

In her Amended Complaint ("AC"), plaintiff has deleted her second claim for

violation of 42 U.S.C. § 1983 and added a claim for negligence. Otherwise, the claims are the same.

Plaintiff Cheron Davison is African-American and was at all relevant times in the 11th grade at San Marcos High School. On October 7, 1996, Ms. Davison found a racist drawing on her desk depicting an African-American person with a rope around the neck, the word "Sharoon" written next to the body. Two fellow students placed the drawing on her desk; plaintiff believes these same students were involved in white supremacist activities.

Plaintiff complained to her teacher, defendant Robert Burtness, but he did nothing except excuse her from class. She notified her mother, who arrived at the high school a short time later the same day. Ms. Davison and Mrs. Sims were taken to defendant Montoya, the Vice Principal. Montoya minimized the incident and took no further action. The school authorities offered no counseling or other assistance to plaintiff.

Plaintiff's father went to the school the next day to speak with the principal and was also directed to see Montoya. Montoya stated that there would be an investigation, but plaintiff believes none occurred. Plaintiff alleges that she does not believe that the superintendent or principal learned of the incident until later.

Plaintiff also alleges that her locker was broken into after the incident with the drawing. In addition, High School authorities allow students to wear confederate flags on their clothing on school premises. Moreover, in December 1996, "a white student made racially derogatory remarks toward another student." The racially hostile environment at San Marcos High School frightened and upset plaintiff so much that her parents withdrew her from school and instituted home schooling. She then transferred to another high school in the same district.

The racially hostile environment at San Marcos had existed even before the October 1996 incident involving the drawing, consisting of racially offensive graffiti on student lockers and photos, epithets, active white supremacist groups on campus that circulated racist literature, and students wearing confederate flags.

Defendants knew of the racially hostile environment. The local NAACP had petitioned the district two years earlier regarding the problems. Plaintiff alleges that "[d]efendants created, encouraged, accepted and tolerated this racially hostile environment by knowingly and intentionally failing to take appropriate actions to remedy it."

## II

## DISCUSSION

### A

#### Standards

##### 1. Motion to Dismiss

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. It will be denied unless it appears that plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *SEC v. Cross Financial Services. Inc.,* 908 F.Supp. 718, 726–27 (C.D.Cal.1995). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir.1994). The court is not required, however, to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994). The court may consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Emrich v. Touche Ross &*

*Co.,* 846 F.2d 1190, 1198 (9th Cir.1988). "[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994).

### 2. *Motion for a More Definite Statement*

■ Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement before responding to the pleading when that pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading[.]" The motion "attacks unintelligibility in a pleading, not simply mere lack of detail." SCHWARZER, TASHIMA, AND WAGSTAFFE, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL ("FED.CIV.PROC."), ¶ 9: 349 (citation omitted). If the moving party could obtain the missing detail through discovery, the motion should be denied. *Beery v. Hitachi Home Electronics (America), Inc.,* 157 F.R.D. 477, 480 (C.D.Cal.1993), *cited in* FED.CIV.PROC., ¶ 9:350. "The court has wide discretion and may require that the complaint be amended, or that the information sought be supplied by declarations or other means." FED.CIV.PROC., ¶ 9:365, *citing Warth v. Seldin,* 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343.

### B

#### *Analysis*

Upon review of plaintiff's Amended Complaint, there is no question that it is not "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Accordingly, the court denies the motion for a more definite statement and proceeds with the analysis of defendants' arguments in support of their motion to dismiss.

#### 1. *Title VI*

Defendants make several arguments in favor of dismissal of this claim. They con-tend that the Eleventh Amendment bars actions by private parties seeking to impose liability that, if found, will be satisfied with public funds paid from the state treasury. They also argue that a Title VI claim must include an allegation of intentional discrimination and that the claim is not available in any event for instances of student-to-student harassment.

■ As plaintiff correctly responds, defendants have ignored the express language of Title VI concerning state immunity. Notably:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of ... title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d–7(a)(1); *Grimes v. Sobol,* 832 F.Supp. 704, 707 (S.D.N.Y.1993), *aff'd,* 37 F.3d 857 (2d Cir.1994) (per curiam) ("Congress explicitly abrogated the states' immunity from suits in federal court alleging violation of Title VI of the Civil Rights Act of 1964"); *see also Association of Mexican–American Educators v. State of California,* 836 F.Supp. 1534, 1541–42 (N.D.Cal.1993). Defendants' argument is simply wrong, and the Court rejects it accordingly.

As for the pleading requirements for a claim under Title VI of the Civil Rights Act of 1964, defendants' arguments also fail. Title VI provides in relevant part that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Moreover, with respect to programs and activities that the Department of Education funds, the relevant regulations "interpret[ ] Title VI as prohibiting racial harassment." *See* "Racial Incidents and

Harassment Against Students at Educational Institutions; Investigative Guidance" ("DOE Investigative Guidance"), 59 Fed.Reg. 11448 (DOE Notices March 10, 1994). The DOE Investigative Guidance further provides that the Office of Civil Rights ("OCR") must find the following in order to establish a violation of Title VI under the hostile environment theory:

> (1) A racially hostile environment existed; (2) the recipient had actual or constructive notice of the racially hostile environment; and (3) the recipient failed to respond adequately to redress the racially hostile environment.

*Id.* at 11449. To determine whether conduct constitutes a hostile environment, one looks to "the totality of the circumstances." Id. at 11452 (citations omitted). The nature of the incident is one of those circumstances. *See id.* at 11452–53.

█ To state a claim for damages under Title VI, plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance. *Fobbs v. Holy Cross Health System Corporation,* 29 F.3d 1439, 1447 (9th Cir.1994), *cert. denied,* 513 U.S. 1127, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995). Plaintiff need not plead that she was an intended beneficiary of the federally funded program. *Darden v. Alameda County Network of Mental Health Clients,* 1995 WL 616633 (N.D.Cal. 1995), *citing Fobbs,* 29 F.3d at 1447. And, "[a]lthough the plaintiff must prove intent at trial, it need not be pled in the complaint." *Fobbs,* 29 F.3d at 1447 (citations omitted). Defendants' argument that plaintiff must plead intentional discrimination thus lacks support.

As for whether peer harassment is actionable under Title VI, it bears noting that the law regarding all forms of impermissible harassment is developing rapidly. Further, "[c]ourts have often noted the similarity in purpose and construction of Title VI and Title IX, and have found the Title VI regulations instructive in interpreting Title IX and its accompanying reg-

ulations." *Grimes v. Sobol, supra,* 832 F.Supp. at 711 (citations omitted). Judge Kimba Wood added that "courts have consistently found language of Title IX decisions applicable to Title VI cases." *Id.* (citations omitted).

In a recent Title IX action, the court had occasion to address student-to-student harassment. In *Nicole M. v. Martinez Unified School District,* 964 F.Supp. 1369 (N.D.Cal.1997), a junior high school student sued on various theories for multiple acts of sexual harassment committed by her male peers. Plaintiff's mother complained to the principal. Even after plaintiff was sexually assaulted in class, the principal only suspended the abusive student for one day. Other responses proved equally inadequate. Plaintiff eventually withdrew to a school in another district.

Judge Patel explained that when a co-worker sexually harasses a fellow worker because of the co-worker's sex, this conduct constitutes sex discrimination. *Id.* at 1375, *citing Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) ("plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment") and *Ellison v. Brady,* 924 F.2d 872, 878 n. 8 (9th Cir.1991) ("we explained earlier [that] the Supreme Court in *Meritor* implicitly adopted the EEOC's position that sexual harassment which unreasonably interferes with work performance violates Title VII"). The court in *Nicole M.* added: "the same rule should apply to student-to-student sexual harassment as applies to employee-to-employee sexual harassment[.]" 964 F.Supp. at 1375.

Acknowledging that "[f]ew circuits have addressed the standards to be used in determining whether a school is liable for peer harassment," the court noted that district courts seem to rely on the factors articulated in *Davis v. Monroe County Board of Education,* 74 F.3d 1186, 1193 (11th Cir.), *vacated pending reh'g en banc,*

91 F.3d 1418 (11th Cir.1996).[1] The court there followed Title VII case law and set forth the following five elements comprising a claim for student-to-student sexual harassment:

(1) plaintiff is a member of a protected group;

(2) plaintiff was subject to unwelcome sexual harassment;

(3) the harassment was based on sex;

(4) the harassment was "sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment"; and

(5) that some basis for institutional liability has been established.

*Id.* at 1376, *quoting Davis,* 74 F.3d at 1194 (citing *Meritor* and *Harris v. Forklift Systems Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ Applying the factors to plaintiff's racial harassment claim, plaintiff alleges that she is African American, that is, a member of a protected group. She was subjected to unwelcome harassment that was in fact based on her race. And, accepting the truthfulness of all allegations and construing them in the light most favorable to plaintiff for purposes of this motion, she has alleged "sufficiently severe or pervasive" harassment in the particular context of this high school's alleged previous problems with racial tensions.

■ On the fifth factor, the court in *Nicole M.* examined alternative views as to the proper basis for institutional liability. The court concurred with District Judge Wilken, on the same court, that the "knew or should have known" standard ought to apply. *Id.* at 1377, *quoting Doe v. Petaluma City School District,* 949 F.Supp. 1415, 1426 (N.D.Cal.1996). Judge Wilken explained: "school districts are on notice that student-to-student sexual harassment is very likely in their schools, particularly in junior high school. In light of this knowledge, if a school district fails to develop and implement policies reasonably designed to bring incidents of severe or pervasive harassment to the attention of the appropriate officials, it must be inferred that the district intended the inevitable result of that failure, that is, a hostile environment." 949 F.Supp. at 1426.

Judge Wilken emphasized that the "knew or should have known" standard would not lead to strict liability for school districts. She explained that under Title VII, plaintiff still had to prove that the "gender-based harassment was so severe or pervasive as to create a hostile environment that adversely affected the plaintiff's ability to function in the environment." In addition, plaintiff had to prove that the entity actually knew, "or should in the exercise of its legal duties have known" of the harassment. Third, even if plaintiff proved the hostile environment and the entity's actual or constructive knowledge, it would "not be liable if it [took] prompt, appropriate remedial action[.]" *Id.*

The court in *Nicole M.* agreed that applying the "knew or should have known" standard comported with case law and fairness and concluded that "an official or a supervisor of students such as a principal, vice-principal or teacher cannot put her head in the sand once she has been alerted to a severe and pervasive hostile educational environment." 964 F.Supp. at 1378. The court thus found that plaintiff's allegations that the district knew plaintiff was being sexually harassed by other students and "intentionally failed to take steps that were adequate to stop the harassment" met the standards for maintaining a Title IX action for damages

---

**1.** The court added that other courts had adopted and employed its standard despite the fact that the *Davis* decision had been vacated. 964 F.Supp. at 1376, *citing Seamons v. Snow,* 84 F.3d 1226, 1232–33 (10th Cir.1996) (peer harassment); *Doe v. Claiborne County,* 103 F.3d 495, 513, 515 (6th Cir.1996) (teacher-to-student harassment); *Kinman v. Omaha Public School District,* 94 F.3d 463, 467–69 (8th Cir.1996) (same); and district court cases cited at 1377.

against the school district. The motion to dismiss was denied. *Id.*

In this case, defendants have cited only cases from non-Ninth Circuit courts and one that pre-dates the *Petaluma* III and *Nicole M.* decisions above. Despite the fact that plaintiff discussed *Petaluma* III in some detail, defendants simply ignored the decision, repeating their contention that plaintiff must allege intentional discrimination and that no claim may be stated for student-to-student harassment.

In *Petaluma* III, Judge Wilken addressed defendants' argument in rejecting the Fifth Circuit's view that a Title IX claim requires discriminatory intent on the school district's part. The court explained the essence of the harassment claim:

> The actual thrust of this type of claim is to impose liability on the school district based not on the harassing conduct of its students, but on the district's own conduct of knowingly permitting the discriminatory hostile and abusive environment to continue and to inflict an ongoing injury on its female students.

*Petaluma III*, 949 F.Supp. at 1421. The Ninth Circuit has similarly rejected the contention that Title IX "does not impose liability on a school district for peer hostile environment sexual harassment, absent allegation that the school district itself discriminated based on sex[.]" *Oona R.–S. v. McCaffrey*, —— F.3d ——, 1998 WL 216944 (9th Cir.1998), p. 5. The court clarified that plaintiff sought to hold the school liable for its own inaction, not for the actions of others:

> [I]n this circuit the duty to take reasonable steps to remedy a known hostile environment created by a peer is clearly established. Parents have long had a right to expect school officials to do what they reasonably can to protect the children who are temporarily in their custody and to provide an appropriate learning atmosphere.

*Id.*

A racially hostile environment is as actionable under Title VI as is a sexually hostile environment under Title IX. The Department of Education's Office of Civil Rights ("OCR") certainly recognized this fact in its Investigative Guidance. When investigating the severity of racial harassment, the Guidance states, OCR will take into account "the unique setting and mission of an educational institution[.]" Further,

> An educational institution has a duty to provide a nondiscriminatory environment that is conducive to learning. In addition to the curriculum, students learn about many different aspects of human life and interaction from school. The type of environment that is tolerated or encouraged by or at a school can therefore send a particularly strong signal to, and serve as an influential lesson for, its students.

DOE Investigative Guidance, 59 Fed.Reg. at 11449. In sum, none of the controlling authorities support defendants' arguments regarding plaintiff's obligation to plead intentional discrimination and her ability to sue for defendants' failure to remedy pear harassment. The Court rejects defendants' contentions and denies their motion to dismiss plaintiff's Title VI claim accordingly.

### a. State Law Claims

Defendants first contend that the court should decline to exercise supplemental jurisdiction over these claims. As defendants assert nothing but conclusions, they appear not to take this argument very seriously.

 The more compelling argument is that defendants are entitled to immunity under California Government Code §§ 815 and 820.2. Plaintiff offers only a perfunctory opposing argument, claiming that these provisions are affirmative defenses and that it is premature to rule on immunity.

California Government Code Section 820.2 provides:

Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

In *Nicole M., supra*, the court found the decisions of the principal or superintendent "to impose discipline on students and conduct investigation of complaints necessarily [to] require the exercise of judgment or choice," and therefore to be discretionary. 964 F.Supp. at 1389–90. As a result, neither the principal nor the superintendent could be liable for negligent infliction of emotional distress or negligent retention, supervision, training and discipline. *Id.* at 1389.

Under Government Code Section 815.2(b), moreover, public entities were also immune, the court found. *Id.* at 1390. That section provides: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." As the Senate Legislative Committee explained in the comment to Government Code § 815, "the practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts." Immunity is available on intentional tort claims, such as plaintiff's claim for intentional infliction of emotional distress. *Doe v. Petaluma School District*, 830 F.Supp. 1560, 1583 (N.D.Cal.1993) ("*Petaluma I*"). As a result, the court need not reach the issue of whether plaintiff otherwise stated a claim here. *Id.*

Indeed, it appears that California courts have established in a variety of contexts that "a governmental immunity is a jurisdictional bar to a claim for money damages against a public entity or employee."

*Gates v. Superior Court (Hirata)*, 32 Cal. App.4th 481, 506, 38 Cal.Rptr.2d 489, 509 (1995). In *Gates*, various former or current senior commanders in the Los Angeles Police Department were sued by riot victims for their alleged discriminatory deployment of police officers during the 1992 uprising. The court of appeal granted their petition for writ of mandate to compel the trial court to sustain their demurrers to state law causes of action based on their immunity. Although a different section of the Tort Claims Act was involved in Gates, the relevant analysis remains the same. Namely, the court must determine whether the claims are within the scope of the statutory immunity.

Here, the claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against public entities and public employees fall well within the immunities' boundaries. Moreover, the immunity is jurisdictional, thus requiring dismissal of the 3d, 4th, and 5th claims.

■ On the Unruh Act[2] claim, defendants argue that the statute prohibits only intentional discrimination, not negligence. As the court explained in *Nicole M.* in response to the identical contention, the "inadequate response to complaints of sexual harassment [constituted] a denial of 'advantages, facilities, privileges, or services.'" 964 F.Supp. at 1389. Disagreeing with the notion that "allegations of inadequate action on the part of a school district and its officials cannot rise to the level of intentional discrimination," Judge Patel observed:

It seems odd to suggest that a student who is subjected to a hostile educational environment by virtue of peer sexual harassment would not be deprived of some of the advantages and privileges of a public education.

**2.** California Civil Code Section 51 provides: "All persons within the jurisdiction of this state are free and equal and no matter what their … race … are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

*Id.* The court found sufficient facts pled as to intentional deprivation of advantages, privileges, or services at the high school and other intentional discrimination based on plaintiff's sex. Relying on the California Supreme Court's willingness to attribute a "broad reach" to the Unruh Act, Judge Patel refused to dismiss plaintiff's claim. *Id.*

Here, plaintiff has alleged facts regarding peer racial discrimination and the ensuing hostile educational environment. In addition, she has alleged facts regarding her efforts to notify and obtain assistance from school officials and their refusal to take any action in response. As in *Nicole M.*, plaintiff's allegations of intentional discrimination suffice to withstand the motion to dismiss this claim. Defendants' motion to dismiss the Unruh Act claim is therefore denied.

■ Finally, defendants contend that plaintiff is not entitled to punitive damages for what is, at most, a negligence case. Plaintiff argues that she has pled a sufficient factual basis for exemplary damages.

The issue of the availability of punitive damages remains unsettled in recent district court decisions. For example, in *Doe v. Oyster River Cooperative School District*, 992 F.Supp. 467 (D.N.H.1997), the court addressed the liability of a public school district under federal law when one student sexually harassed other students. The court concluded, based on the presumption of the Supreme Court in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), that "all remedies, including punitive damages, are available to private litigants under Title IX." Nonetheless, the court found no evidence in the case at bar of the requisite malicious intent: "although the school district may have failed to take appropriate action to end the harassment, it does not appear that it acted with reckless indifference to plaintiffs' rights in this regard." *Oyster River*, 992 F.Supp. at 483.

In *Purcell v. Pennsylvania Department of Corrections*, 1998 WL 10236 (E.D.Pa. 1998), the court followed the "general rule of *Franklin*", that is, that punitive damages are available "unless: 1) there is clear direction to the contrary by Congress; 2) such relief would be inappropriate." *Id.* at p. *13; *see also Burns–Vidlak v. Chandler*, 980 F.Supp. 1144, 1152 (D.Hawai'i 1997) (Americans with Disabilities Act). Thus, although there is little case law on the actual award of punitive damages in a Title VI case, they are, as best as can be determined, available. As in *Oyster River, supra*, however, plaintiff has included only a boilerplate punitive damages claim. Nonetheless, defendants have cited no authority to establish that this fact by itself warrants striking the prayer. The motion to strike will be denied.

### III

### *CONCLUSION*

For the reasons set forth above, the Court hereby *denies* the motion to dismiss the first and second claims for violations of Title VI of the Civil Rights Act of 1964 and the Unruh Act, respectively. The Court *grants* the motion to dismiss the third, fourth, and fifth claims for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. The Court *denies* the motion to strike the prayer for punitive damages at this time.

IT IS SO ORDERED.