**Curtis V. RODRIGUEZ,
et al., Plaintiffs,**

v.

**CALIFORNIA HIGHWAY PATROL,
et al., Defendants.**

**No. C 99 20895 JF EAI.**

United States District Court,
N.D. California,
San Jose Division.

March 13, 2000.

Jon B Streeter, San Francisco, CA, Michelle Alexander, San Francisco, CA, Alan L. Schlosser, San Francisco, CA, for plaintiffs.

Bill Lockyer, San Francisco, CA, Tyler Pon, San Francisco, CA, S Michelle Inan, Oakland, CA, for defendants.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, DENYING MOTION TO SEVER PLAINTIFFS AND/OR STRIKE CLASS ACTION ALLEGATIONS AND DENYING MOTION TO STRIKE PORTIONS OF PLEADING

FOGEL, District Judge.

This case presents a broad, vigorously disputed challenge to an alleged law enforcement practice known as racial profiling. Defendants [1] have filed three motions directed at the pleadings: (1) a motion to dismiss the First Amended Complaint; (2) a motion to sever plaintiffs and/or strike Plaintiffs' class action allegations; and (3) a motion to strike certain portions of the First Amended Complaint. Plaintiffs [2] oppose the motions. The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on February 18, 2000. For the reasons set forth below, the motion to dismiss will be granted in part and denied in part, and the motion to sever plaintiffs and/or strike the class action allegations and the motion to strike portions of the First Amended Complaint will be denied.

## I. BACKGROUND

Plaintiffs' First Amended Complaint alleges that Defendants maintain a policy, pattern and practice of targeting African–Americans and Latinos in conducting stops, detentions, interrogations and searches of motorists. The individual plaintiffs have alleged specific incidents of racial profiling which they claim occurred on or near State Highway 152 and Interstate Highway 5 in the Pacheco Pass area of Santa Clara and Merced Counties. Both the individual and the organizational plaintiffs allege that racial profiling is an integral part of a federally funded drug interdiction program sponsored by the United States Drug Enforcement Agency known as "Operation Pipeline" as well as other drug interdiction efforts. Plaintiffs base their allegations in part upon a draft report of California's Joint Legislative Task Force on Government Oversight on September 29, 1999, which alleges the existence of racial profiling in Operation Pipeline.

## II. MOTION TO DISMISS

### A. Legal Standard

The issue to be decided on a motion to dismiss is not whether a plaintiff's claims have merit but rather whether the moving defendant has shown beyond doubt that the plaintiff can prove no set of facts entitling him or her to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court's review is limited to the face of the complaint, docu-

---

**1.** Defendants are the California Highway Patrol ("CHP"), the Bureau of Narcotics Enforcement ("BNE"), California Highway Patrol Commissioner D.O. Helmick ("Helmick") and Bureau of Narcotics Enforcement Chief Joe Doane ("Doane").

**2.** Plaintiffs are Curtis V. Rodriguez ("Rodriguez"), Jose Lopez ("Lopez"), MacArthur Washington ("Washington"), California Branches of the National Association for the Advancement of Colored People ("NAACP") and the California League of United Latin American Citizens ("LULAC").

ments referenced by the complaint and matters of which the court may take judicial notice. *See Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir.1991); *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 n. 4 (9th Cir.1996); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986). Ordinarily, a complaint may be dismissed as a matter of law for only two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984) (citing 2A J. Moore, *Moore's Fed. Practice* ¶ 12.08 at 2271 (2d ed.1982)). When a court considers a motion to dismiss, all allegations of the complaint are construed in the plaintiff's favor. *See Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987). In particular, "[c]ivil rights complaints are to be liberally construed," and need only comply with F.R.Civ.P. 8(a). *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992). For a motion to dismiss to be granted, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987). Motions to dismiss generally are viewed with disfavor under this liberal standard and are rarely granted. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997).

## B. NAACP's and LULAC's Standing

Both of the organizational plaintiffs—NAACP and LULAC—are nonprofit membership organizations which allege that they are suing on behalf of their members. Defendants argue that NAACP and LULAC lack standing to sue on behalf of their members under the circumstances of this case.

"[E]ven in the absence of injury to itself, an association may have standing solely as representative of its members." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see, e.g., NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *International Un-ion, United Auto. v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986). Associational standing is particularly appropriate where "the association is seeking to represent the interests which are central to the purpose of the organization" and "where the relief sought is some form of prospective remedy, such as declaratory judgment, which will inure to the benefit of the organization's membership." *Peick v. Pension Benefit Guar. Corp.,* 724 F.2d 1247, 1259 (7th Cir.1983).

■ An association has standing if (1) its members would have standing to sue in their own right; (2) the interests the organization seeks to protect are relevant to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members of the organization in the lawsuit. *See Brock,* 477 U.S. at 282, 106 S.Ct. 2523; *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Individuals for Responsible Gov't, Inc. v. Washoe County,* 110 F.3d 699, 702 (9th Cir.1997).

■ Defendants do not dispute that the interests sought to be protected by NAACP and LULAC in this litigation are relevant to the purposes of these organizations, which include opposing racial discrimination against African–Americans and Latinos, respectively. In addition, Defendants also acknowledge that Plaintiffs have alleged that individual members of NAACP and LULAC have been stopped and detained by CHP and BNE officers on the basis of race.

Defendants' primary argument is that the organizational plaintiffs' allegations are too general and that more specific allegations should be made so that one may determine the actual identities of particular members of each organization who claim to have been subjected to Defendants' alleged illegal practices. However, while information about claimed injuries caused to members of NAACP and LULAC may be obtained in the course of

discovery, no legal authority requires that the names and contact information of individual members be alleged in the complaint. *Legal Aid Society of Hawaii v. Legal Services Corp.,* 145 F.3d 1017, 1030 (9th Cir.1998), cited by Defendants, is inapposite. That case considered the issue of standing in the context of a motion for summary judgment rather than a motion to dismiss; it thus involved an examination of the entire record following an opportunity for discovery rather than a bare pleading. *See id.* at 1030–31.

Defendants also argue that Plaintiffs' claims cannot be adjudicated without the participation of individual members of NAACP and LULAC. Defendants quite reasonably point out that proof of the existence of a policy or practice of racial profiling requires proof of more than one instance of official misconduct. However, Plaintiffs in fact have pled more than one instance of official misconduct. There is no authority for the proposition that only members of the organizational plaintiffs can serve as individual plaintiffs; at this early stage of the proceedings, it would appear to be sufficient that the individual plaintiffs are members of the racial and ethnic groups for whom the organizational plaintiffs state that they are advocates.

The Court concludes that for present purposes NAACP and LULAC have standing to sue on behalf of their members. As in *Legal Aid Society of Hawaii, see id.,* at 1029–31, this conclusion does not preclude a determination that these organizations lack standing later in the litigation.

### C. Venue

 The incident of racial profiling alleged by Rodriguez occurred in Santa Clara County, which is located in the Northern District of California; the incidents alleged by Lopez and Washington occurred in Merced County, which is in the Eastern District of California. Defendants argue that the proper venue for the Lopez and the Washington incidents is the Eastern District rather than the Northern District. However, venue is proper in any

district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2) (1999). Section 1391(b)(2) does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate. *See Sidco Indus. Inc. v. Wimar Tahoe Corp.,* 768 F.Supp. 1343, 1346 (D.Or.1991) (language of § 1391(b)(2) "contemplates that there may be more than one district in which a substantial part of the events giving rise to the claim occurred, and that venue would be proper in each such district"); *see also Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir.1992); *First of Mich. Corp. v. Bramlet,* 141 F.3d 260, 264 (6th Cir.1998). All that Plaintiffs need show is that a substantial part of the events giving rise to their claims occurred in the Northern District of California.

Rodriguez, a resident of Santa Clara County, allegedly was stopped in Santa Clara County, in the Northern District. Moreover, Plaintiffs claim in their class action allegations that Defendants routinely utilize racial profiling in the Pacheco Pass area, much of which is located in the Northern District. Plaintiffs allege that the stops of Rodriguez, Lopez, Washington and all other purported class members are related because they stem from the same alleged practice or policy of racial profiling in the Pacheco Pass area. Plaintiffs thus clearly are alleging that a substantial part of the events giving rise to this action occurred in the Northern District. Accordingly, while venue would be proper in the Eastern District, venue also is proper in the Northern District.

### D. Claims Against Helmick and Doane as Supervisory Officials

 Defendants urge dismissal of the claims against Helmick and Doane because the First Amended Complaint does not contain specific factual allegations supporting the alleged conclusion that these defendants maintain or are responsible for a

policy which leads directly to stops of Plaintiffs' vehicles on the basis of race. However, the United States Court of Appeals for the Ninth Circuit explicitly has rejected a judicially crafted heightened pleading standard for civil rights cases; instead, it has held that such claims need only comply with F.R.Civ.P. 8(a). *See Bergquist v. County of Cochise*, 806 F.2d 1364, 1367 (9th Cir.1986), *disapproved on other grounds by City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). As the circuit court has stated:

> This circuit applies a rule of reason to civil rights actions challenged for sufficiency at the pleading stage. While a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled, plaintiff is not expected to plead his evidence or specific factual details not ascertainable in advance of discovery.

*Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir.1986) (internal quotation marks and citations omitted); *see also San Jose Charter of the Hell's Angels Motorcycle Club v. City of San Jose*, No. C 99 20022 SW PVT, 1999 WL 1211672, at *12 (N.D.Cal. Dec.6, 1999) ("Civil rights plaintiffs ... have never been expected to plead their evidence or specific factual details not ascertainable before discovery has taken place.")

A supervisory law enforcement official is liable in his or her individual capacity "if he [or she] set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he [or she] knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991) (internal quotation marks, brackets and citation omitted); *see also Bergquist*, 806 F.2d at 1370. The First Amended Complaint alleges that Helmick and Doane personally participated in racial profiling, acted jointly and in concert with others who racially profiled, authorized, acquiesced in or failed to take

action to prevent racial profiling, promulgated policies and procedures pursuant to which racial profiling occurred, with deliberate indifference failed and refused to implement and maintain adequate training and supervision and/or ratified the use of racial profiling. The First Amended Complaint also alleges that CHP and BNE supervisors and management continue to encourage these activities in Operation Pipeline despite evidence that drivers of color are targeted and subjected to unwarranted stops, detentions, interrogations and searches, and that the supervisors have been aware that CHP and BNE officers are engaging in racial profiling but have refused to stop it. These allegations, if proved, would establish liability under *Larez, Bergquist* and *Harris. Cf. Maryland State Conference of NAACP Branches v. Maryland Dep't of State Police*, 72 F.Supp.2d 560, 565 (D.Md.1999). Accordingly, applying as it must the ordinary pleading standard of F.R.Civ.P. 8(a), the Court concludes that the claims against Helmick and Doane are sufficient to withstand a motion to dismiss.

### E. Immunity Under the California Tort Claims Act

Defendants assert that they are immune from Plaintiffs' state law statutory and common law tort claims under three separate provisions of the California Government Code. These code sections provide as follows:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

Cal. Gov't Code § 820.2.

> Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by

his own negligent or wrongful act or omission.

Cal. Gov't Code § 820.8.

Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Cal. Gov't Code § 815.2(b).

Preliminarily, the Court notes that these immunity provisions do not apply to claims for declaratory and injunctive relief. *See* Cal. Gov't Code § 814. The Court also is mindful of the admonition of the California Supreme Court that "in governmental tort cases, the rule is liability, immunity is the exception." *Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 221 Cal.Rptr. 840, 710 P.2d 907, 915 (1985) (internal quotation marks and citations omitted). As was explained in *Lopez,*

section 820.2 confers immunity only with respect to those "basic policy decisions" which have been committed to coordinate branches of government, and does not immunize government entities from liability for subsequent ministerial actions taken in the implementation of those basic policy decisions. This distinction is sometimes characterized as that between the "planning" and the "operational" levels of decision-making.

*Id.*

██ Under California law, government defendants have the burden of proving that the actions of government employees fall within scope of a statutory immunity. In *Lopez*, "[s]uch a showing was not and could not have been made by [the defendant] at the demurrer stage," and "[i]t therefore would [have been] error to sustain [the defendant's] demurrer based on Government Code section 820.2." *Id.* at 916; *see also Bell v. California*, 63 Cal. App.4th 919, 74 Cal.Rptr.2d 541, 547 (1998) (section 820.2 "requires proof that the specific conduct that gave rise to the suit involved an actual exercise of discretion—a

conscious balancing of risks and advantages; the term is limited to 'basic policy decisions' ").

██ As was the case in *Lopez*, The First Amended Complaint alleges actions on the part of Defendants which go beyond "basic policy decisions." For example, it is alleged that Defendants' supervisory personnel were consciously aware of the racially discriminatory nature of Operation Pipeline and similar programs in training individual officers and encouraged and commended them in their alleged discriminatory tactics, and that the officers who stopped Rodriguez, Lopez and Washington did so with a conscious racial motive. The individual plaintiffs also allege that they were falsely imprisoned, allegations as to which there is an explicit statutory basis of liability under Government Code § 820.4. Thus, because Plaintiffs' allegations in the present case are broad enough to encompass conduct not within the scope of the cited immunity provisions, the Court cannot resolve at the pleading stage the issue of whether any or all of the immunities bar Plaintiffs' claims.[3] *Davison by Sims v. Santa Barbara High School District*, 48 F.Supp.2d 1225 (C.D.Cal.1998), relied upon by Defendants, is inapposite because the allegations of the complaint in that case were limited to "basic policy decisions."

### F. Title VI of the Civil Rights Act of 1964

The First Amended Complaint alleges a violation of Title VI of the Civil Rights Act of 1964, which provides that

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. The regulations implementing Title VI provide that no program

---

**3.** Obviously, nothing herein precludes Defendants from reasserting any statutory immuni- ty at a later stage in these proceedings.

receiving federal assistance through the Department of Justice shall

> utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the program as respects individuals of a particular race, color, or national origin.

28 C.F.R. § 42.104(b)(2).

Defendants argue the Plaintiffs have failed to state a claim under Title VI because they fail to allege specific facts from which it can be concluded that Defendants engage in racial discrimination. However, as noted above, there is no heightened pleading standard in the Ninth Circuit for civil rights complaints; compliance with F.R.Civ.P. 8(a) generally constitutes sufficient particularity to withstand a motion to dismiss.

Under Title VI, there are two types of potential liability. Plaintiffs may state a claim for damages pursuant to the statute, for equitable relief pursuant to the regulations or for both. *See Larry P. by Lucille P. v. Riles,* 793 F.2d 969, 981–82 (9th Cir.1984) (citing *Guardians Ass'n v. Civil Serv. Comm'n of City of New York,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983)). The statute requires proof of discriminatory intent; the regulations do not. *See* 793 F.2d at 981–82.

■■■■ "To state a claim for damages under 42 U.S.C. § 2000d, *et seq.,* a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance. Although the plaintiff must prove intent at trial, it need not be pled in the complaint." *Fobbs v. Holy Cross Health Sys. Corp.,* 29 F.3d 1439, 1447 (9th Cir.1994) (citations omitted). In the present matter, Plaintiffs have met the pleading standard set forth in *Fobbs.* Plaintiffs allege that Defendants engage in

racial discrimination by stopping, detaining, interrogating and searching motorists on the basis of race, and they describe the discriminatory methods and practices Defendants allegedly employ. Plaintiffs also allege that CHP and BNE are recipients of federal funding. Nothing more is required to state a claim under Title VI, although Plaintiffs also allege that Defendants acted with discriminatory intent.

■■■■ To establish a *prima facie* case that Defendants violated Title VI regulations, Plaintiffs must demonstrate that Defendants have a program, policy or practice that has a "discriminatory impact." *Larry P. by Lucille P.,* 793 F.2d at 982. Plaintiffs allege that CHP's drug interdiction efforts have a discriminatory impact on motorists of color. Anticipating Defendants' position that their drug interdiction tactics are justified by law enforcement necessity, *see id.,* Plaintiffs further allege that these tactics are largely unsuccessful and therefore not justified. Specifically, Plaintiffs allege that only a small percentage of Operation Pipeline stops and searches result in the discovery of incriminating evidence, yet large numbers of motorists of color are the victims of racial discrimination through racial profiling.

The Court concludes that the allegations of the First Amended Complaint adequately state a discriminatory-intent claim for damages and a discriminatory-impact claim for equitable relief under Title VI. *Cf. Maryland State Conference of NAACP,* 72 F.Supp.2d at 566–68.

### G. Fourth Amendment

In *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that the Fourth Amendment is not violated when a minor traffic violation is a pretext rather than the actual motivation for a stop by law enforcement. Thus, the individual plaintiffs' allegations that they were stopped for pretextual reasons, without more, would not state a claim under the Fourth Amendment.[4]

---

4. *Whren* does not hold that a law enforcement officer's motivation is entirely irrelevant when probable cause for a stop is based on a traffic violation. As explained in *Whren,* "[t]he Constitution prohibits selective enforcement of

However, Plaintiffs make Fourth Amendment claims which are not barred by *Whren.* Plaintiffs allege that Defendants have subjected them not only to baseless stops but also to prolonged detentions, intrusive interrogations and searches without probable cause or reasonable suspicion to believe that any traffic violation or crime has been committed and without consent. For example, Rodriguez and Washington allege that they were stopped even though Defendants did not have a reasonable suspicion that either had committed any traffic violation or crime[5], that they were searched even though neither had consented to being searched and that Defendants had no basis for searching them without warrants.

The Fourth Amendment is violated when a motorist is stopped without reasonable suspicion of a traffic violation or crime and searched without consent or probable cause. *See, e.g., United States v. Jimenez–Medina,* 173 F.3d 752, 754 (9th Cir.1999); *Whren,* 517 U.S. at 809–10, 116 S.Ct. 1769. Detentions or searches that are prolonged or otherwise unreasonable in view of the reason for the stop also are unlawful under the Fourth Amendment. *See, e.g., United States v. Foppe,* 993 F.2d 1444 (9th Cir.1993) (describing as a violation of the Fourth Amendment an officer's search of a motorist unrelated to the traffic violation that originally justified the stop of the motorist's vehicle). The First Amended Complaint alleges facts with respect to each of the Plaintiffs which, if proved, would establish that CHP violated the Fourth Amendment by the intrusiveness and duration of its searches and de-

tentions even assuming a valid stop. *See, e.g., Martinez v. Nygaard,* 831 F.2d 822, 827 (9th Cir.1987) ("The stop may last only so long as is necessary to carry out its purpose and the investigative methods used should be the least intrusive means reasonably available to confirm or dispel the officer's suspicion."); *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (same). The Court therefore concludes that Plaintiffs have sufficiently alleged a Fourth Amendment claim.

## H. Equal Protection

Defendants next assert that Plaintiffs have failed to state a claim for violation of the Equal Protection Clause because they have failed to identify "similarly situated" Caucasian individuals who were treated differently from Rodriguez, Lopez and Washington. However, in the civil context, plaintiffs properly state a claim for relief under the Equal Protection Clause if they allege that Defendants acted with discriminatory intent. *See, e.g., Washington v. Davis,* 426 U.S. 229, 247–48, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Pursuant to F.R.Civ.P. 9(b), Plaintiffs are permitted to plead intent generally. Plaintiffs have met this standard.

Defendants rely heavily upon *United States v. Armstrong,* 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), in support of this aspect of their motion to dismiss. However, while *Armstrong* is a case of critical importance in the criminal context, it is less instructive in a civil case such as the present one.[6] In *Armstrong,*

---

the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." 517 U.S. at 813, 116 S.Ct. 1769.

**5.** It is settled law that race or appearance alone is insufficient to justify a stop or arrest. *See United States v. Bautista,* 684 F.2d 1286, 1289 (9th Cir.1982) ("race or color alone is

not a sufficient basis for making an investigatory stop"); *United States v. Brignoni–Ponce,* 422 U.S. 873, 886–87, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (appearance of Mexican ancestry alone is insufficient to justify a stop or arrest under the Fourth Amendment).

**6.** This Court notes and respectfully disagrees with the discussion of *Armstrong* and the Equal Protection claim in *Chavez v. Illinois State Police,* 27 F.Supp.2d 1053 (N.D.Ill. 1998).

several criminal defendants were indicted on drug and firearm charges involving crack cocaine. The defendants, who claimed that they were being subjected to selective prosecution because they were African–American, filed a motion seeking evidence to support their claim and to support a motion to dismiss the criminal charges. The Court held that while F.R.Crim.P. 16(a)(1)(C) authorizes criminal defendants to examine government documents material to a defense against the government's case-in-chief, these defendants could not discover documents material to their selective prosecution claim unless they produced some evidence that similarly situated defendants of other races had not been prosecuted. *Armstrong* neither addressed the standard for discovery in civil cases based upon an Equal Protection claim nor interpreted the Federal Rules of Civil Procedure; rather, it addressed the distinct question of what showing a criminal defendant must make to obtain discovery of evidence which might be relevant to a selective prosecution motion seeking dismissal of criminal charges.

The Court in *Armstrong* emphasized that the judiciary owes special deference to the prosecutorial office. The exercise of prosecutorial discretion in bringing charges is a power within the " 'special province' of the Executive." *Id.* at 464, 116 S.Ct. 1480. "As a result, the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* (internal quotation marks, brackets and citation omitted). Law enforcement officers, in contrast, never have been afforded the same presumption of regularity extended to prosecutors. Courts have recognized the possibility that

officers in the field occasionally may abuse their discretion and selectively target specific groups and individuals on the basis of race or other illegitimate factors. *See, e.g., United States v. Martinez–Fuerte,* 428 U.S. 543, 559, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Delaware v. Prouse,* 440 U.S. 648, 661, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

The result in *Armstrong* rests in part on the Court's conclusion that "[t]he similarly situated requirement does not make a selective prosecution claim impossible to prove" because the class of similarly situated individuals is limited to the group of individuals arrested for the particular crime at issue. 517 U.S. at 466, 116 S.Ct. 1480. In the civil context, however, such a requirement well might be impossible to meet. In the present action, the class of similarly situated individuals necessarily would include all motorists present in areas where Defendants were patrolling. It is highly doubtful that Defendants or any other law enforcement agency maintain records identifying law-abiding individuals who are not stopped. The only similarly situated persons as to whom records might be maintained would be the relatively small subset of individuals who were stopped and questioned by the police but not arrested, and even for this group, it is difficult to conceive what data Plaintiffs could obtain absent discovery which have not been alleged in the First Amended Complaint already. Consistent with *Washington* and its progeny, this Court concludes that Plaintiffs have stated an Equal Protection claim by alleging that Defendants acted with discriminatory intent and that Defendants knew about but refused to stop racially discriminatory practices on the part of their officers and by alleging the existence of statistical evidence and other facts which if proved would support an inference of discriminatory intent.[7]

7. The statistical evidence and other facts alleged by Plaintiffs also would if proved support an inference of discriminatory intent. As noted in *Washington,* statistical evidence "may for all practical purposes demonstrate unconstitutionality because in various circumstances the discrimination is very difficult to explain on nonracial grounds." 426 U.S. at 242, 96 S.Ct. 2040; *see United States v. Laymon,* 730 F.Supp. 332 (D.Colo.1990) (statistical pattern and other evidence established unconstitutional racial targeting in stops and searches).

## 1142

### I. Equitable and Declaratory Relief

■ Defendants contend that Plaintiffs lack standing to seek injunctive relief because they have failed to allege a real or immediate threat of future injury as a result of Defendants' alleged conduct. Defendants also assert that Plaintiffs are not entitled to declaratory relief because they have not presented a live case or controversy.

In *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Supreme Court held that because the plaintiff was unable to establish a real or immediate threat of injury, he lacked standing to pursue equitable relief. *Lyons,* however, is distinguishable from the present case for at least three reasons. First, the Court based its decision in *Lyons* on a full evidentiary record, not the untested allegations of the complaint. Plaintiffs are entitled to discovery to attempt to establish an evidentiary basis for their claims for injunctive relief. *See Riggs v. City of Albuquerque,* 916 F.2d 582, 586–87 (10th Cir.1990). After discovery, Defendants may attack Plaintiffs' entitlement to injunctive relief by a motion for summary judgment. Second, in *Lyons,* in order to grant injunctive relief the trial court would have had to conclude that the plaintiff was likely to commit crimes in the future; here, the availability of relief will turn upon whether Plaintiffs can show that they and those they seek to represent are likely to be subjected to future racial profiling. *See Maryland State Conference of NAACP,* 72 F.Supp.2d at 565 (D.Md.1999). Third, Plaintiffs allege a pattern and practice of illegal law enforcement activity. "The *Lyons* complaint, on the other hand, did not assert that there was a pattern and practice of applying choke holds without provocation or, if it did state such a claim, the Court found it was not supported by the record." *Id.* at 564–65. Injunctive relief may be appropriate if Plaintiffs are able to establish a pattern or practice of racial profiling. *See Allee v. Medrano,* 416 U.S. 802, 815, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *cf. Hodgers–Durgin v. de la Vina,* 199 F.3d 1037 (9th Cir.1999) (en banc) (injunctive relief inappropriate where plaintiffs are unable to establish future threat on full evidentiary record).

Defendants also suggest, citing concerns of comity and federalism, that this Court should not consider granting equitable relief to Plaintiffs even if they have standing to seek it because such relief would constitute undue federal interference with the autonomy of state agencies. This Court is very mindful of these concerns. However, as noted at oral argument, this action is likely to have a number of discrete procedural stages. Even if Defendants' motion to dismiss is denied, Plaintiffs still must establish that this case is appropriate for class certification, and even if class certification is granted, Plaintiffs must prove that their disputed allegations have merit. As noted previously, the Court's role given the present procedural posture of the case is not to comment upon the validity of Plaintiff's claims but rather to decide if Plaintiffs have alleged facts which if proved might entitle them to some or all of the relief they seek. By this order, the Court determines only that Plaintiffs have alleged enough to entitle them to proceed with discovery to attempt to prove their allegations. The entirely appropriate concerns raised by Defendants are better addressed after there has been at least some development of the factual record; to conclude otherwise would be to suggest that federal courts never ought to be concerned with the activities of state agencies under any circumstances.

Defendants' arguments with respect to Plaintiffs' claim for declaratory relief mirror those made with respect to the claim for injunctive relief. For the same reasons discussed above, the Court concludes that Plaintiffs have presented a live case or controversy which may warrant declaratory relief.

### J. Eleventh Amendment

■ Defendants correctly argue that Plaintiffs' state law claims must be dismissed as to CHP and BNE because the Eleventh Amendment bars the prosecution

of these claims against the State in federal court. Plaintiffs appropriately do not contest this point, except to note that the State has waived its immunity to Plaintiffs' claims pursuant to California Government Code §§ 11135 and 11139. Accordingly, Plaintiffs' state law claims (other than their claims pursuant to the Government Code) against the CHP and the BNE must be dismissed.

### K. Monetary Damages

Defendants contend that Plaintiffs' claims of violations of article I, § 7(a) (due process and equal protection) and § 13 (unreasonable seizures and searches) of the California Constitution must be dismissed insofar as they seek monetary damages because these provisions of the California Constitution do not provide for a private right of action for damages.

██ This federal Court is reluctant to predict whether the Supreme Court of California would recognize a private right of action for damages directly under the relevant provisions of the California Constitution. However, California Civil Code § 52.1(b) already allows Plaintiffs to seek damages for interference with rights secured by the California Constitution. It does not appear from the face of the First Amended Complaint that Plaintiffs are seeking damages beyond those allowed by the Civil Code; the Court thus sees no need as a practical matter to determine whether there is a right of action for damages directly under the provisions of the California Constitution.[8]

### III. MOTION TO SEVER PLAINTIFFS AND/OR STRIKE CLASS ALLEGATIONS

Defendants move to sever Lopez and Washington from this case on the grounds that their alleged experiences of racial profiling are not sufficiently similar to those of

Rodriguez to maintain them in a single action with Rodriguez. Defendants also move to strike the class action allegations from the First Amended Complaint.

As noted above, the Court concludes that the allegations of the three individual plaintiffs are factually and legally similar. The fact that the First Amended Complaint contains different details about each of the Plaintiffs and the incidents about which each complains—for example, that Rodriguez and Lopez are Latino while Washington is African–American—does not alter the fact that each claim arises from the same alleged policy, pattern and practice of racial profiling. The factual record as to each individual Plaintiff has yet to be developed. Considering only the allegations of the First Amended Complaint, the Court concludes that it would be inappropriate to sever Plaintiffs Lopez and Washington from this action at the present time.

The same is true with respect to the class allegations. To the extent that Rodriguez, Lopez and Washington raise different issues than those raised by the purported class, the appropriateness of any or all of them serving as a class representative will be tested in the context of a motion for certification of the class. Accordingly, the Court declines to strike the class action allegations at this stage of the proceedings.

### IV. MOTION TO STRIKE PORTIONS OF PLEADING

██ The First Amended Complaint contains an excerpt from the Ninth Circuit's opinion in *Washington v. Lambert,* 98 F.3d 1181 (9th Cir.1996), which describes "an all too familiar set of circumstances—an intrusive law enforcement *stop and seizure of innocent persons on the*

---

8. As suggested at oral argument, this Court would be extremely reluctant to find a basis for tort liability against a state in the absence of an explicit (as opposed to an implied) waiver by the state of sovereign immunity. The fact that the California Legislature enacted

Civil Code § 52.1(b) is a strong indication that any waiver of sovereign immunity with respect to claims based upon the California Constitution was limited to the express terms of that statute.

basis of suspicions rooted principally in the race of 'the suspects' " *id.*, at 1182. Defendants move to strike this quotation from the First Amended Complaint on the grounds that it is scandalous. However, while it is neither necessary nor customary for a party to include an excerpt from a published appellate case in a pleading, Defendants cite no authority that such inclusion is improper per se or is likely to cause any prejudice to Defendants.

Defendants also move to strike references to the report issued by California's Joint Legislative Task Force on Government Oversight on September 29, 1999, regarding alleged racial profiling in Operation Pipeline. Defendants argue that the Task Force report does not relate to this case. However, the Task Force report discusses in detail alleged racial profiling by Defendants and forms part of the factual predicate for Plaintiffs' claim that racial profiling is present here.

### V. ORDER

Good cause therefor appearing, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is GRANTED without leave to amend as to the eighth through thirteenth causes of action against Defendants California Highway Patrol and Bureau of Narcotics Enforcement; the motion is otherwise DENIED;

2. Defendants' Motion to Sever Plaintiffs and/or Strike Class Action Allegations from the First Amended Complaint is DENIED;

3. Defendants' Motion to Strike Portions of Pleading is DENIED;

4. Defendants shall file their Answer within thirty (30) days after the date this order is filed;

5. Discovery shall remain stayed pending the Case Management Conference scheduled for March 20, 2000, at 1:30 pm, and until further order of the Court.